ON the 29th of April, 1780, John Floyd made two entries for land on military warrants, the one for 50 acres, and the other for 400, adjoining his Royal Spring tract, on the north fork of Elkhorn ; and in the year 1783, he was killed by the Indians, having previously made his vyill, by which, after sundry special bequests, he devised the residue of his estate to his wife and children, and appointed William Pope and his wife, executors. Afterwards, on the 19th of July of the same year. Robert Johnson executed to Mrs. Floyd an obligation in the following words : “ Know all men by these presents, that Í, Robert Johnson, of Fayette, do hereby engage, for value received, to con. rey to Mrs. Jenny Floyd, executrix of the Hon. John Floyd, deceased, the absolute property in four hundred and fifty acres of land, for so much as I shall obtain by virtue of assignments to me, made this day, on two entries adjoining the Royal Spring trqct, in Fayette, and containing the like quantity of four hundred and fifty acres,) out of the land which Í purchased of Mr. Patrick Henry, and patented in the name of Carter Littlepage, assignee of John Byrd, which is on the Ohio, in Jefferson county, and is one of the tracts calked < Mount Byrd,’ or that just below the falls, to be laid off in a convenient manner and form, and of equal quality with the remaining part of my purchase. The conveyance to be made in a reasonable time. In witness whereof, I have hereto set my hand and seal, this 19th of July, 1783,
ROBt. JOHNSON, (seataj”
On the 1st of March, 1784, Johnson entered 775 acres on a treasury warrant, including the land aL, ieged to be covered by the entries in the name of Floyd, and on the 21st of March, 1785, obtained a ¡latent for six hundred and sixty-six acres of the land so entered by him. Not long after obtaining his patent, Johnson sold and conveyed to others, who took possession of the land, which is still held by them or their sub-purchasers In 1798, Johnson having never takpn any steps to perfect the title on the entries in the name *111 of Floyd, his devisees caused them to be surveyed, and in 1800, patents were issued to them. In 1799, between' the time when the surveys on these entries were made, and the emanation of the patents, Johnson entered into an agreement with Robert Breckenridge, as agent for John Stewart, who had intermarried with the daughter of John Floyd, deceased, and Alexander Breckenridge, who had intermarried with Mrs. Floyd, ami was the guardian of Floyd's other children, then minors, by Which, after reciting that “ in consequence of Johnson’s claiming the execution of a contract, said by him to have been entered into whh Floyd, before his death, for the exchange of the two entries adjoining Floyd’s tract on Elkhorn, called the Royal Spring tract, for other lands,” it was agreed, that they should yield to Johnson the equitable interest of (he representatives of Floyd, upon the condition, that Johnson furnished other lands of equal quality and situation, and the time and mode of carrying the contract into effect were stipulated ; but it was expressly provided, that this contract should not prevent the minor children from cancelling and declaring the same void, in case they should think proper to do so, when they came of age, and within a reasonable time afterwards. Johnson failed to perform this contract, as well as that which he had entered into with Mrs. Floyd ; and after bis death and the death of Mrs; Floyd, who left children, both by’Floyd and Breckenridge, with whom she liad intermarried, her heirs and representatives, and those of Floyd, filed this bill on the 30 th of December, 1815, against Johnson’s hrirs and those who hold the possession of the land claimed to be covered by the entries in the name of Floyd. The complainants exhibit the entries- in the name of Floyd, and insist upon their validity, and that they have been correctly surveyed. They set forth the contracts entered into by Johnson with Mrs. Floyd, and with Robert and Alexander Breckenridge ; but the latter they disclaim, and deny its obligation on them ; and they pray that the land covered by their patents may be conveyed, and the possession thereof surrendered to them, and for general relief.
Johnson’s heirs controvert the validity of the entries in the name of Floyd, as well as the correctness of the mode in which they have been surveyed. Of the *112 contracts alleged to have been made by their anees* tor, not having been on file when their answer was put they are unable to say any thing, and they plead and rely upon the statute of limitations. The other defendants allege themselves to have been purchasers without notice, and that they have been in the peaceable possession of their respective parcels of land for more than twenty years before the commencement of the suit, and they rely upon the statute of limitations.
Posseasion 20yearsun*n der an adverse title, ba-s relwt111 cept where the com-pl’ts labor ity. It is a settled rule, tnat in joint rights the whole thosewho had aright to showiTto labór under some dlsabiltime\heh.right, accrued, otherwise bipse^of erateTs a°*> bar. It seems ihat eiinTsooTo" devisees jointly, con-statutes them a devisé m¿de laniris t0 be equally divideda “g^^ade the., tenants in common, ¿"¿fseverid rijfg‘s_e
*112 The complainants in 1820, filed an amendment to their bill, praying, that if they should not be entitled to the land in question, there might be decreed to them full remuneration under the contract of 1799, made by Robert Johnson with Robert and Alexander Breckenridge.
a fina* !ieal'*nS- the circuit court dismissed the bill, and the complainants have appealed to this court,
2. We will first enquire into the right of the compiainants to relief, as being founded alone on the entries in the name of Floyd.
Without examining the validity of these entries, or t]>e mode in which they have been surveyed, we have hesitation in saying, that the right of the compiainants to relief, so far as it is founded upon them alone, cannot be sustained. The defendants who hold ^e jatl(j ¡¡, di.spute, and are vested with th , ofvirtue or conveyances made legal title by Johnson, are proven to have been in the peaceable and uninterrupted p0Sfjess¡011 fop more than twenty years before the comoenccment of this suit, and it is now settled, by ilia repeated decisions of this court, that possession with title, for such a length of time, will be a bar to relief *n e,lu'N> unkss those who assert their right to such relief, shall show that they labored under some disability.
'|'his, wo apprehend, the complainants have not sufhcicntly done in the present case. It is true, that Mrs. Floyd had, as is inferable from the evidence in the cause, intermarried with Breckcnridgc before the possess*on was 1»ken of the land in dispute, and of course she labored under the disability of coverture. But there is no legitimate evidence against the defendants wj,0 ¡)0j(j (-¡)e jaSi{j jn ¿jSpute, of the disability of ei- °‘ Floyd’s children. Johnson, indeed, by his contract of 1799, recognizes them, except Mrs. Stew *113 $irt, tó be their minors; but that was long after he had parted with the title, án'd his recognition of the fáct, 'can be no eviuence against the defendants who hold the land : and ás to Mrs. Stewart, who was a child of Floyd by a former marriage, there is not a particle proof, that shé lab ó red under any disability when the cause of action accrued. For when she married is not shown ; nor is it shown, what was her age át the time the possession of the land in dispute was taken. For any thing that appears to the court, therefore, she Plight have been, at that time of full age and unmarri ed ; and it is settled, that to prevent the lapse of time from operating as a bar to relief, the whole of those who have a right of suit, must be shown to labor un. der some disability at the time the right accrued. This rule applies, indeed, only to those cases in which the right is a joint one; and whether the right assert. ed in this case is of that character or not, is doubtful; for the patents upon the entries, in the name of bloyd, issued to his devisees jointly, and would, therefore, be construed to confer upon them a joint right. But Floyd, by his will, directs his estate to be equally di. vided amongst his devisees, which would make them tenants in common and give to them' several rights, Supposing, however, these rights to be of the latter character; still, we apprehend, the lapse of time would equally operate as a bar to relief in this case.
W- ere the ^^th.-. an! cestor died 32 years be-0f he suit, the court will notice that°ah his immediate descendants ^ed'the^* age 0f2i years, and l^ust have*aver-wards elapsed before the suit In such case, ^¿e„*enas to the ages or tune ofmarcumpiainan¡s,the court will not J^rried durmg infancy,
3. The rule adopted by courts pf equity, in analogy to the statute of limitations, that an adverse posses, sion for twenty years will bar relief, is as applicable to a several as it is to a joint right, and must prevent relief unless the party claiming shows himself to be within the saving of the statute. As to the children of Floyd, we have already seen, that there is ho evi denceas against the defendants in possession, that either of them labored under any disability at the time tlie cause of action accrued. There is manifestly no pre. tence of proof, of Mrs. Stewart’s disability at that time; and it is evident, from the time of Floyd’s death in 1783, that his other children must have attained their full age, more than ten years before the com. mencement of the suit, and the statute only allows ten years after the removal of their disabilities. Neither of the children of Floyd, therefore, can be within saving of the statute,
when a right onceaccrued orcometo a person labor-but^and tha* disabiUty is removed P?*?011 there is no63’ provision in the statute those to"'5 whom the esiate may then descend their^isabUity when the descent was cast
One disabiliadded to ancf ther.
A contract wasmade by 2 Dig, 860. a guardian respecting the lands of righuo de-*1" dare it voi.l after maturi *erv£K?in6"h contract — -aft ter attaining their age, bíl^renouncingihe con" tract and assernng their rights* after wards ’fay an amended bill, the contracts Held, that bar t0 re„ lief under it. Where exe- ®“ general* authority to sell lanas,but ^ ®P* torenfolra* sale made by them valid, it to'have^baen made for those purpo- ^ the will vests the power to sell lands in two saleTyone is y0id.3 in sueh case, ^S1a^nn^"t by one only of the executots, vests no e
*114 4. It is true, that Mrs. Floyd, by her intermarriage with Breckenridge, before the cause of action accrued, was within the saving of the statute, and she is alleged by the complainants to be dead, and her children by Breckenridge, ate proven to have attained their full aSe> within less than ten years before the commence, ment of this suit; but it is not shown, that she died within ten years before the commencement of the suit; anti beyond that time, where twenty years have elapscd, the right of her heirs is not saved by the statute, We have not forgotten, that it has been decided by this court, that under our statute, if a right of action aco,’ues to one laboring under no disability, and by his death the right descends upon his heir, who does labor under some disability, the right of the latter will be save(i until ten years after such disability is removed ; but we have never decided, that one disability can be added to another. Such a succession of disabilities, as ¡fc WOuld tend to protract litigation to an illimitable extent, is obviously contrary to sound policy, and is expressly forbidden by the letter of the statute; for where a right has accrued to a person laboring under any of the disabilities mentioned in the statute, it de. clares “ every such person, and his or her heirs, shall arit* may> notwithstanding the said twenty years are or shall be expired, bring and maintain his action, or ,liake his entry within ten years next after such disability removed, or death of the person so disabled, and n°t afterwards.” According to the plain and literal import of this language, the right is saved to the person himself for ten years after the disability is removg,], 01» to his heirs after his death, and is forbidden to be exercised by his heir afterwards, without regard to his condition. When, therefore, a right of action has once accrued, or come to a pe^jgpn laboring under a disability and that disability is removed, or the per. son so disabled has died, it is obvious, that the statute has provided for no other or successive disability; and to permit such disability to cumulate and save the r'§bt, would be adding to the statute, and giving to it an operation contrary to its import. The right, therefore, of the heirs ot Mrs. Floyd, afterwards Mrs. Breckenridge, to]maintain this suit, must be barred, untoss they had shown, that she had died within less than ten years before the commencement of the suit, *115 and consequently, the complainants have failed to sus. tain their claim to relief, to any extent, so far as it it is founded alone upon the entries of Floyd.
5. It remains then to enquire, whether they are en. titled to relief in virtue of the contract made by Johnson with Mrs. Floyd, or of that which was made by him with Alexander and Robert Breckenridge, in 1799.
It is perfectly clear, that they are not entitled to re. lief in virtue of the latter contract. By its terms, the minor children had expressly reserved to them the right of declaring it void, and they did so by their ori. ginal bill in this case. It is true, that by the amend. ment to their bill, they pray for relief under that con. tract; but having once renounced it, they cannot be permitted afterwards, successfully to assert a right under it.
6. With respect to the contract made by Johnson with Mrs. Floyd, we think it equally , clear, that the complainants are not entitled to relief under it. The assignment of the entries by Mrs. FI >yd, as executrix to Johnson, could confer upon him no right fo them,
■ There was no power given by Floyd, in his will, to big executors, to sell land, except such as they should judge necessary for special purposes, and the assign ment of the entries in question, does not appear to have been made for those purposes, Besides, the power vested in the executors was a joint power, and one alone could not execute it. Nor could the assignment of the entries to Johnson operate to prevent the devi. sees of Floyd from perfecting their title; and, in fact, it did not so operate, as is proven by their afterwards having surveyed and patented the land in their own names. Under these circumstances, Johnson evidently never could have been compelled specifically to. ecute the contract, and no relief can now be'granted'to the complainants in virtue of it.
The decree must be affirmed with costs,