[1] See Waterman's Am. Ch. Dig. vol. 1, tit. *Award;* N. Y. Dig. vol. 1,
tit. *Arbitration & Award.*

---

JACKSON, *ex dem.* BOGERT and others *against* SCHAUBER.

*A direction
in a will to ex-
ecutors to sell
lands, to pay
legacies, and
distribute the
residue, does
not break the
descent to the*

EJECTMENT for land in Saratoga county; tried at the
circuit in that county, June 1, 1826, before WALWORTH,
C. Judge.

*heir at law; though he be expressly cut off by a disinheriting legacy, and a declaration in
the will that he shall take nothing as heir.   Otherwise, if the land be devised to the exe-
cutors to sell.*

*To cut off the heir at law, the estate must be devised expressly, or by implication, to
some other person.*

*A devise that executors shall sell, confers merely a naked power without interest.*

*The court will not, nor is a jury authorized to presume a conveyance by the executors*

.At the trial, the plaintiff claimed title under a patent
covering the premises in question, dated September 10th,
1708, to William Appel; one half of the premises declared
to be in trust for the heirs of H. Hrigedoodn.  The lessors
of the plaintiff claimed title as heirs at law of the patentee;
and proved themselves to be the lineal *descendants of
Simon Appel, his son.  Peggy Bogert, one of the lessors,
claimed as the heir, and also under the will of Mrs. Pelts,
her grandmother, dated in 1795, who removed to Albany
during the revolutionary war, and afterwards died there.
The husband of Mrs. Bogert was a practising lawyer for a
number of years in the city of Albany.  Mrs. Pelts de-
clared that all she had was two houses in New York, for
which she received rent.

On the 17th of July, 1729, Wm. Appel, the petentee,
made his will, naming four children living, and one dead.
The will made no mention of his wife.  It appointed Jo-
hannes, his son, executor, and his daughter, Engetje, ex-
ecutrix, with power to sell his real and personal estate.
After the testator's death, August 9th, 1738, Engetje re-
nounced, and letters testamentary issued to Johannes on
the same day.  By this will, the testator bequeathed to
Simon, his son, the lessor's ancestor, 20s. for his birthright,
to be raised and levied out of the testator's estate; "where-
with," (the will proceeded) "I do utterly exclude, debar
and preclude him, my said son, from having or claiming
any other or farther pretensions, claims and demands what-
soever, as being my heir at law; or by any other pretexts,
color or show whatsoever."  He then gave to his sons Si-
mon and Johannes, certain wearing apparel, and other
legacies to the latter; with legacies to his other children.
The will then empowered and directed his executors to
grant, bargain, sell and dispose of all the residue of his
real and personal, movable and immovable estate, &c. ,in

and a continued outstanding title, as between the heir and a mere intruder without pretence
of title, even after the lapse of more than forty years' possession.

A mortgage of more than 20 years standing, on which no interest has been paid, and
under or upon which there has been no entry or foreclosure, is not such an outstanding title
as will bar an ejectment by the mortgagor or his heirs.

Courts will not countenance presumptions of outstanding title in favor of a mere intruder
without pretence of title.

NEW YORK, the city of New York, or elsewhere, to any person or per-
May, 1827.
sons whatsoever, at public vendue, or otherwise, as to his
Jackson
v.        executors should seem necessary and convenient; that their
Schauber.   conveyances of the whole, or any part, should be deemed
valid and effectual in the law, to all intents, &c., as if he
had himself *bona fide* sold the same; the proceeds to be
appropriated to the payment of the pecuniary legacies;
and the residue he bequeathed 1-5 to Simon, and the other
4-5 among his other children and a grandchild. This will
was read in evidence by the defendant's counsel.

[*189]        *On the 4th of August, 1713, Appel, the patentee, re-
leased the east half of the patent to the heirs of Hrigedoodn,
pursuant to the trust declared in the patent. On the
12th of June, 1733, he mortgaged his own, (the west half)
in fee to Reneaudet, Bancker and Rutgers, to secure the
payment of £108 10s. in one year, with covenants to pay
the money, and of seisin; also of quiet enjoyment, if de-
fault should be made in payment of the money. This
mortgage, more than 20 years before the trial, had been
sent by a grandson of Bancker, one of the mortgagees, to
L. H. Palmer, Esq., attorney at law, in the county of Sara-
toga; and was afterwards delivered by Philip Brotherson,
who married one of the heirs of Rutgers, another of the
mortgagees, to Pioneer, one of the lessors of the plaintiff.
The mortgage was offered in evidence by the plaintiff's
counsel; and received, though objected to by the defend-
ant's counsel.

The counsel for the plaintiff read in evidence, under the
decision of the judge, though objected to, an arbitration
bond, dated November 13th, 1767, between Mrs. Pelts and
one Killmon, reciting that John Appel, deceased, late of
the city of New York, to secure £50 to Killmon, had
mortgaged to him in fee a house and lot in the city, (de-
scribed in the bond,) and that the mortgagor afterwards
borrowed of Killmon £20, for which he gave his bond;
and (as Killmon insisted) agreed that the mortgage should
stand as security for the £20; that Killmon had brought
an ejectment for the mortgaged premises against Mrs. Pelts,
who, for herself and others claiming under Wm. Appel's

will, insisted that the premises, in virtue of the will, be-
longed to her and those for whom she claimed, in law or
equity; that the mortgagor purchased a mortgage on the
premises, with money belonging to them and him, and in
trust for all claiming under the will of Wm. Appel; that
Killmon insisted that the title was legally vested in John
Appel, the mortgagor, who had long possessed the pre-
mises as his own estate; Killmon having no notice of the
*trust, if there was any. The bond then stated the submis-   [*190]
sion of the controversy to arbitrators.

The defendant's father entered on the premises in ques-
tion about 50 years, and died in possession about 20 years
before the trial; his son and only child, the defendant, suc-
ceeding to the possession. The defendant's counsel offered
to show that the father devised the premises to the son;
and to prove the devise by a notice from the plaintiff's at-
torney to produce the will on the trial; but this was over-
ruled, the will not being dated, and the son not having
been in possession 20 years before the suit was commenced;
and the will being void, as not altering the course of de-
scent. The father had bestowed valuable improvements
on the premises. But the evidence was very satisfactory
against his possession being adverse.

The defendant's counsel insisted, that the above matters
proved that the patentee had parted with his title in his
life-time; and were, at any rate, sufficient to be left to the
jury, to presume, either that the patentee, in his life-time,
or his executors since his death, had conveyed all his in-
terest in the patent. They prayed the judge to instruct
the jury accordingly. This he declined to do; charging
in favor of the plaintiff.

The defendant's counsel excepted to the various deci-
sions against them, made by the judge in the course of the
cause.

*S. G. Huntington*, for the defendant, moved for a new
trial. He said, by the will of the patentee, the legal es-
tate, vested in his executors, for the purposes expressed in
the will. This construction is fortified by the strong words

NEW YORK, used in it, manifesting, and indeed expressing the purpose
May, 1827. to cut off any descent to Simom, under whom the lessors
Jackson      claim.   Cowp. 657.   1 Bro. Civ. & Adm. Law. 337.   3
v.           Burr. 1684.   5 B. & A. 785.   6 Cruis. Dig. tit. 38, Devise,
Schauber     ch. 11, s. 76, &c.   1 Ves. Sen. 485.   2 Str. 798.   1 P.
             Wms. 472.   6 Co. 16.   2 Vern. 687.   Rob. on Wills, 431,
             note.   1 W. Bl. 543.

[*191]          *If this is not the true construction of the will, we con-
             tend that upon the evidence produced, it should have been
             left to the jury to presume that the patentee in his life-time,
             or the executors pursuant to his will, had sold and con-
             veyed all his interest in the patent.

             The mortgage created an outstanding title.   As the law
             then stood, the mortgagor could not retain possession a
             moment without a covenant to that effect.   You cannot
             presume it satisfied.   This is never done upon lapse of
             time, unaccompanied with possession in the mortgagor.
             The legal possession was in the mortgagee; because the
             title was there.   (2 Bl. Com. 158.  Pow. on Mort. 408.  id.
             ch. 11.   2 Cruis. Dig. 76, s. 3.   2 Bl. Com. 159, note.  Eq.
             Cas. Abr. 313.   2 Bro. C. C. 399.   2 Cruis. Dig. 152, 162.)
             The rents and profits of the estate would go to the execu-
             tors.   (4 John. Ch. Rep. 388.   6 Cruis. Dig. 537, Devise,
             ch. 20. s. 40.)

             The jury had a right to presume a conveyance or extin-
             guishment of the patentee's title.   (Sugd. L. V. 285, 295.
             2 Bl. Rep. 1228.   11 Ves. 350.)

             The power devised to the executors was coupled with
             an interest.   (Toll. L. E. 413.   6 Wheat. 504.   7 id. 59,
             109.   8 id. 495, 535.   10 id. 177, note.(a)   12 Ves. 261,
             266.   13 John. Rep. 513.)

             *L. H. Palmer* and *J. L. Wendell*, contra.   The question
             whether Simon was cut off from the inheritance, turns on
             the distinction between a devise of a mere power to the
             executors, and the devise of an estate.   (1 Caines' Cas. Err.
             16.)   To disinherit the heir, the estate must pass either ex-
             pressly or by implication.   (9 John. 104.)   And there is
             no application, unless it be necessary to effectuate the ob-

jects of the power. If the mode of executing the power, and the object, are both provided for expressly, there is no room for implication. Here every thing is expressed. And until the power was executed, the estate descended to the heir at law, Simon. (6 Cruis. Dig. tit. 38, Devise, ch. 11, § 76, § 7, p. 198, last ed. 3 Burr. 1684.)

Till an entry or foreclosure, the mortgagee's interest is merely personal estate. The mortgage is but a security for the debt. (5 Cowen, 202. 4 John. Rep. 43, 590. 8 Ves. 105. 7 John. 278.) An outstanding title, to be available, must be a subsisting one; and it cannot be set up by an intruder. 5 Cowen, 131. 4 T. R. 682. 4 John. 202. 3 John. 375.)

[*192]

There is no room for presuming any title in the defendant. Neither he nor his ancestor has ever claimed any. The mortgagees claim none. There is no room to presume a conveyance by the executors. No *cestuis que trust* are named by the will. Indeed, there is nothing in the case which brings it within the rules authorizing a presumption of conveyance in favor of this defendant. (5 Ves. 565. 8 id. 129. 12 id. 239. Cowp. 102, 214. Runn. on Ej. 343.) Where the plaintiff shows a good title, every presumption is in his favor; and against an outstanding title. (3 John. Rep. 375, 386. 6 id. 266. 10 id. 223, 381, 387. 11 East, 372. 2 John. Cas. 353.)

*A. Van Vechten,* in reply. It is plain from Wm. Appel's will, that he intended his heir should take no estate as heir. He is expressly excluded, and a legacy is devised as a consideration for the exclusion. The intent should always govern in construing a will; and if it can legally be carried into effect, it is the duty of courts of justice to see that this be done. The legacy to Simon was to be paid by the executors out of the proceeds of the real and personal estate, on sale; and a legacy is given to one of the executors to be raised in the same manner. The charge of the legacies was a joint charge on both real and personal estate. They were to be raised out of both. On sale, a distribution was to be made of the residue after pay-

ing the legacies. Can it be said that here was not an in-
terest vested in the executors? The testator intended to
leave no part of his estate undisposed of. No part was in-
tended to descend; and it follows that the whole was
vested in the executors. The intent cannot otherwise be
effected; and there is no legal objection to such a construc-
tion. The estate passed to them by implication of law:

[*193]          *because this is necessary to effectuate the intent. I know
there are different opinions expressed on this subject by
different writers; but the law has finally settled down
upon intent, and the means of effecting it, as the true tests
(Toll. L. E. 328, 329. Vin. Abr. Implication, (A.) and the
cases there cited.

It was not necessary that the executors should accept
their trust as such, to enable them to sell the real estate.
They acted as mere trustees. They were required to sell.
It should, therefore, have been left to the jury to presume
that they had conveyed. 1 Caines' Rep. 84, and the cases
there cited. 1 Taunt. 279; 4 Burr. 1962.

He also cited *Niven* v. *Belknap*, ( 2 John. 573.)

*Curia, per* SAVAGE, Ch. J., (after adverting to the ques-
tion of pedigree, which he considered fully maintained by
the plaintiff; also that there was no adverse possession.)
The only questions to be decided are, whether the judge
at the circuit was correct in receiving and rejecting testi-
mony; and whether, from the testimony received, the jury
would have been justified in finding, or presuming the title
out of the lessors.

The defendant's counsel contend that, by the will of
William Appel, the legal title to his real estate vested in
his executors, for the purposes expressed in the will. (The
chief justice here recited its provisions.)

1. The question which first presents itself, is, in whom
did the real estate vest on the death of the testator? Was
it in the heir at law, or in the executors by virtue of the
will?

This question cannot be better answered, perhaps, than
it has been by Kent, justice, in *Bergen* v. *Bennet*, (1 Cain.

Cas. Err. 15, 16.) He says, " if a man, by his will, directs his executors to sell his land, this is but a bare authority without interest; for the land, in the mean time, descends to the heir at law, who, until the sale, would, at common law, be entitled to the profits; and being but a naked authority, if one executor dies, the power, at common law, would not survive. But if a man devises his *land to his [*194] executors, to be sold, then there is a power coupled with an interest; for the executors, in the mean time, take pos· session of the land, and of the profits. In this case, as the estate, so also the trust, would survive to the surviving executor."

This rule is to be found in Co. Litt. 113, a. and 236, b. The rule has, however, been questioned by Hargrave, in his note on the first citation; though his remarks apply more particularly to what is said as to the power surviving. It is admitted by him, too, that in respect to the operation of such a devise, considered as mere authority, the strict notion about naked powers is certainly with Lord Coke.

Powell, in his treatise on devises, (p. 193,) takes a distinction between a direction in a will that the executors shall sell the real estate, and a devise to the executors, of the real estate, to sell. In the one case, a naked authority is given: in the other, an authority coupled with an interest. In the former case, the freehold remains with the heir, until a sale by the executors. In the latter, the freehold vests at once in the executors.

It is a cardinal rule in the construction of wills, that the intention of the testator, when that is apparent, shall prevail, if apt words are used for that purpose.

In the case of *Oates* v. *Cooke*, (1 Bl. Rep. 543; 3 Burr. 1684, S. C.,) an estate in fee was held to pass to a trustee by necessary implication; he being charged by virtue of the estate, with the payment of annuities in fee, and some of them to the heirs at law. Lord Mansfield said the intention is to be collected from all the parts of the will; and it must be clear, or else the heir at law shall not be disinherited.

In *Gibson* v. *Lord Montfort*. (1 Ves. Sen. 485,) the testator

NEW YORK, devised all his estate, freehold, leasehold, &c., to trustees,
May, 1827. their executors, &c.   It was decided by Lord Hardwicke,
Jackson    that the word "heirs" is not necessary to carry a fee; for
v.        trustees have a fee when the purposes of a trust cannot be
Schauber.  answered otherwise.   He observed that by plain, necessary
implication and construction, the estate was given away
from the heir at law.

[*195]          *So an estate may undoubtedly pass by implication, as in
*Willis* v. *Lucas,* (1 P. Wms. 472,) where an estate for life
was devised to S.; and after the death of S. and his wife,
then to the sons of S.   The wife took an estate for life, by
implication.

The two last cases were in equity.   They determine the
quantity of estate which shall pass by acknowledged words
of devise.   But the question in this case is, whether the
will contains words tantamount to a devise; or whether a
mere naked power is not given, which does not interfere
with the descent until the power is executed.

In *Denn* v. *Gaskin,* (Cowp. 957,) the testator devised
thus: "As to all such worldly estate as God has endued me
with, I give and bequeath as follows:"   He then gives a
certain freehold messuage to his three nephews; then small
legacies to sundry persons; and then gave to John Gaskin,
(his heir at law, and the lessor,) ten shillings; and all the
rest to his nephews.   It was held that the nephews took
only a life estate; as the law implies a life estate only,
when there are no words of limitation, and there must be
words in a will to control the rule of law, or the latter must
prevail.   Lord Mansfield said that no technical words are
necessary, provided there are words tantamount; that, in
the case, there were circumstances from which he suspected
the testator intended to give a fee to his nephews; he had
made them residuary legatees of his personal estate, and
had given a disinheriting legacy to his heir at law, agree-
ably to the vulgar notion that an heir is cut off with 1s.
But as the will did not contain words sufficient to take
the estate out of the rule of law, it must go the heir, after
the expiration of the life estates.   He added, that though
the intention is ever so apparent, the heir at law must

of course inherit, unless the estate is given to somebody else.[1]

The case of *Ackland* v. *Ackland,* (2 Vern. 687,) was an express devise to Richard, of all the testator's estate, making him executor, and desiring him to pay debts and legacies. The words " all his estate," especially subject to *the payment of debts and legacies, were probably held sufficient to convey the fee.

[*196]

The case of *Houell* v. *Barnes,* (Cro. Car. 382,) was this: the testator devised lands to his wife for life, and after her death, ordered his executors to sell them, and divide the money among his nephews. Two questions were raised: 1. whether the executors had an interest, or only an authority; 2. whether the surviving executor had any authority to sell. And it was decided that the executors had not an interest; but only an authority; and that the surviving executor might sell. So the law was understood by Cruise, (Dig. tit. 38, s. 24.) Speaking of a direction to executors to sell, and a devise to executors to sell, he says, in the latter case, the lands vest in the executors; in the former, they have only a bare authority.

There are cases in this court, where the doctrine of such devises is partially discussed; which were not upon the question in whom the estate vested; but whether the power to sell was well executed by one of several executors. 14 John. 527; 15 id. 345. But in *Jackson* v. *Burr,* (9 John. 104,) the question was, whether the devise of the real estate was to the executors, or they had power to sell only. The testator directed his executors to discharge his debts out of his interest and estates; and what remained he divided in a certain manner; and then added, that as it was uncertain what the estate might be worth, he directed an appraise-

---

[1] To deprive an heir at law, or a distributee of what comes to him by operation of law, as property not effectually disposed of by will, it is not sufficient that the testator, in his will, has signified his intention that such heir or distributee shall not inherit any part of his estate. But to deprive such heir or destributee of his share of the property, which the law gives him in case of intestacy the testator must make a valid and effectual disposition hereof, to some other person. *Haxtun* v. *Corse,* 2 Barb. Ch. Rep. 506.

NEW YORK, ment; and then the payment of his debts and funeral
May, 1827. charges; and if the property amounted to more than he had
Jackson given, his legatees where to receive the surplus in the same
v. proportion as their legacies; and if less, then they were to
Schauber. receive less in the same proportion: and also that the heirs
were to receive their proportion in lands, goods and chattels left at his decease. The will was dated in February, 1784. In 1812, one of the heirs at law brought ejectment against one of the executors who was in possession. On his behalf, it was argued, that the executors took the estate as a devise in fee, charged with the payment of the legacies; and, at all events, they were entitled to possession under
[*197] the will. *The court held there was no devise of the real estate; the most that could be deduced from the will was, that the executors had power to sell the land; and if that were so, the land in the mean time, and until the sale, would descend to the heirs at law.

The subject discussed in several authorities to which we have been referred, (Toller, 414, 2 P. Wms. 550, 1 Br. C. C. 135, 2 Fonb. 402,) is not to whom the legal estate descends; but whether the proceeds of the property sold under the naked power, or the power coupled with an interest, shall be legal or equitable assets in the hands of the executor. In Toller, it is said that even in the case of a mere power on the part of the executor to sell, the descent seems to be broken, inasmuch as the vendee is in by the devisor. The same remark was made by Lord Coke. The descent being broken, here evidently pre-supposes a conveyance by the executor; and there indeed the descent is broken. But the question we are now considering is, what becomes of the estate before any conveyance by the executor? Suppose the executor refuses to act under the authority to sell; can he take possession and hold it until it may suit his convenience to sell, or until compelled by a court of chancery? I think not. The weight of authority undoubtedly is, that when the executor has but a naked power to sell, the estate descends to the heir, and remains in him liable to be divested by a sale under the

power. But if the power is never executed, the fee remains in the heir.[1]

[1] In construing powers, the end and design of the parties, and the substantial, rather than the literal execution of them, is to govern. Thus, where the intention requires it, a power limited in its term has been deemed a general power, and a general power deemed to be for a particular purpose. *Wilson* v. *Troup*, 7 Johns. Ch. Rep. 32.   S. C., 2 Cowen, 195.

A power to executors, to sell lands for special purposes, gives them authority to sell only for those purposes. *Floyd* v. *Johnson*, 2 Lit. 115.

In the construction of powers of sale contained in a will, the intention of the testator is much regarded.   *Osgood* v. *Franklin*, 2 Johns. Ch. Rep. 1; S. C., 14 Johns. Rep. 527.

A power to locate and survey does not give a power to sell. *Moore* v. *Lockett*, 2 Bibb, 69.

A general power to sell, is not restricted by modes of selling pointed out specifically, which do not necessarily abrogate or confine the general power. *Vanada's heirs* v. *Hopkins*, 1 J. J. Marsh. 288.

A power to "sell," silent as to the execution of bond, or deed, or other writing, is nugatory, unless *ex vi termini* the agent has power to bind his principal by writing, to make the purchaser a sufficient deed upon the payment of the purchase money. Ib.

A power "to sell" land, implies a power to bind the principal to convey with general warranty, unless there be restraining words. Ib.

Testator, by his will, after a specific bequest, gives the residue to his wife for life, and at her death, "to the nieces of my wife, in such manner, and at such time as my said wife shall think proper." Held by the court, that the power of disposing was not given to the wife, that she had no right to divest the legacies so given, nor disturb the equality of the portions which the will vested in the nieces, but merely to fix on the "time" and manner of enjoyment; and that a niece of the husband, not being within the description of those named in the will, could not take by the appointment of the wife. *Chesnut* v. *Champion* et al., 2 Hill, 608.

In construing powers, the end and design of the parties, and the substantial rather than the literal execution of them, is to govern.   Thus, where the intention requires it, a power limited in its term has been deemed a general power, and a general power deemed to be for a particular purpose.   *Wilson* v. *Troup*, 7 Johns. Ch. Rep. 32.

A power to executors to sell lands for special purposes, gives them authority to sell only for those purposes. *Floyd* v. *Johnson*, 2 Lit. 115.

A power to executors, "to sell or exchange his (testator's) real estate, as they might judge necessary for the advantage of his estate," is a naked power, and must be executed by all the executors. *Wooldridge* v. *Watkins*, 3 Bibb, 350.

A power in a will to executors to sell, is a naked power, and gives neither right of property nor right of action. *Jameson* v. *Smith*, 4 Bibb. 307.

A power to sell real estate for the payment of debts, is a power coupled with an interest. *Peter* v. *Beverly*, 10 Peters, 532

NEW YORK,  It is objected that the testator excluded the heir, in ex-
May, 1827.
———        press terms by his will. The answer is, he has given the
  Jackson
     v.     estate to nobody else. Then what becomes of it? whose
  Schauber.  property is it? Lord Mansfield says, " though the inten-
tion" (to disinherit) "is ever so apparent, the heir at law
must of course inherit, unless the estate is given to some-
body else." (Cowp. 661.)

My conclusion, therefore is, that the real estate of Wil-
liam Appel, upon his death, vested in his heir at law, Si-
mon Appel.

[*198]      *The lessors, then, have shown title in the patentee;
they have shown that they are the heirs of the patentee;
that the course of descent was not necessarily broken by
the will of the patentee; and that the defendant is not pro-
tected by an adverse possession. They are therefore enti-
tled to recover, unless the title has passed from the heirs
of the patentee; or stands out upon the mortgage, and
the defendant is entitled to avail himself of such defence.

2. His counsel do not claim to have shown positively an
outstanding title; but that it is to be presumed from the
facts and circumstances in the case. When the law en-
trusts persons with the execution of a power, the court will
presume in favor of the execution of that power; and
hence it is contended that the jury were authorized to pre-
sume a sale and conveyance by virtue of the power in the
will. This presumption is strengthened by the arbitration
bond produced on the part of the plaintiff, whereby Mrs.
Pelts claims an interest in certain property, the legal title

Powers in a will are to be so construed as to carry into effect the intention
of the testator. *Peter* v. *Beverly*, 10 Peters, 532.

It is the possession of the legal estate, or a right in the subject over which
the power is to be exercised that makes an interest, although no way bene-
ficial to the grantee of the power. Ib.

It seems that a mere direction in a will to executors to sell land, without
any words vesting in them an interest in the land, or creating a trust, will
be only a naked power, which does not survive. THOMPSON, J. Ib.,
564.

But when anything is directed to be done in which third persons are in-
terested, and who have a right to call on the executors to execute the power
such power survives. Ib. 3 Am. Ch. Dig. tit. *Powers*, p. 233, *et seq.*

to which was in John Appel, on the ground that it was
purchased with money which he received as trustee under
the will of William Appel.

The doctrine of presumption was fully discussed by Lord
Erskine, in the case of *Hillary* v. *Waller*, (12 Ves. 254.)
He says, " the presumption in courts of law from length
of time, stands upon a clear principle, built upon reason,
the nature and character of man, and the result of human
experience. It resolves itself into this: that a man will
naturally enjoy what belongs to him. That is the whole
principle." He then proceeds to enumerate cases in which
it applies ; as a right of way, the use of water and light; a
bond on which nothing has been paid for 20 years, when
a presumption of payment exists, unless repelled by cir-
cumstances. He adds, "It is said you cannot presume un-
less you believe. It is because there are no means of cre-
ating belief or disbelief, that such general presumptions
are raised upon subjects of which there is no record or
written muniment. Mankind, from the infirmity and ne-
cessity of their situation, must, for the preservation of their
property and rights, have recourse to some general princi-
ple, *to take the place of individual and specific belief;      [*199]
which can hold only as to matters within our own time ;
upon which a conclusion can be formed from particular
and individual knowledge. But this is all nothing, when
it can be seen that the possession was provided for," &c.
The case to which these remarks were applied, was that of
a bill praying specific performance of an agreement by the
defendant to purchase a farm of the plaintiff. The defend-
ant objected to the title, as I understand it, because the
whole estate was conveyed in trust in 1664; one half to
be re-conveyed upon a certain contingency at the expira-
tion of 11 years. It was admitted that the possession had
been with the plaintiff, and those under whom he claimed,
for 140 years ; but it was insisted that the legal estate was
outstanding upon the trusts of the conveyance of 1664.
Ld. Erskine presumed a re-conveyance, and compelled the
defendant to take the title. This decision, Mr. Sugden
says, did not meet the approbation of the bar. (Sug. L. V.

250.) But the doctrine of Lord Erskine upon presump-tions generally, has been approved by the supreme court of the United States, in *Prevost* v. *Gratz*, (6 Wheat. 504,) where a trust was presumed to be extinguished after a lapse of 40 years, and the death of all the parties. Mr. Justice Story says the safe course is, to abide by the rule of law, which, after a lapse of time, will presume payment of a debt, surrender of a deed, or extinguishment of a trust when circumstances may reasonably justify it. The same subject was again discussed by that learned judge, in the case of *Ricard* v. *Williams*, (7 Wheat. 109.) Speaking of presumptions, he says, "they are founded upon the consideration, that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there was a transmutation of title to, or an admission of an existing adverse title in the party in possession. They may, therefore, be encountered and rebutted by contrary presumptions; and can never fairly arise when all the circumstances are perfectly consistent with the non-existence of a grant. *A fortiori*, they cannot arise when the claim [*200] *is of such a nature as is at variance with the supposition of a grant."

There are many cases where courts have presumed conveyances in cases of trust. (4 T. R. 682. 11 John. 45, 46. 1 Caines, 88.)

The doctrine of presumption, as it relates to bonds, and to a mortgage, has frequently been agitated. In *Baily* v. *Jackson*, (16 John. 214,) it is said, that after a lapse of 20 years, a mortgage will be presumed to be satisfied where the mortgagor has been in possession, and no interest has been paid, nor any step taken to enforce the mortgage. In the case of *Jackson* v. *Pratt*, (10 John. 381,) payment was presumed in 19 years. It is always proper, however, to rebut presumption by circumstances explanatory of the laches of the party against whom the presumption arises.

In this case there is strong ground to presume an execution and extinguishment of the trust, and, of course, a conveyance of the title to the premises in question to somebody. But when, to whom, or under what circumstances,

we are totally in the dark. And if we presume a sale and conveyance by the trustee, and so an outstanding title; may we not also presume that title extinguished? The principle of presumption is, that every man will enjoy what belongs to him: and if he neglects to reduce it to possession in a reasonable time, he will be presumed to have surrendered it up, if real estate; or received payment, if a bond or mortgage.

NEW YORK,<br>May, 1827.<br>―――<br>Jackson<br>v.<br>Schauber.

In this case, the same facts which would authorize a presumption of an outstanding title, will also justify the presumption of an extinguishment of that title.

3. The mortgage in this case, upon the same principles of presumption, cannot be considered an outstanding title. Besides; it comes from the hands of the lessors of the plaintiff.

4. The plaintiff's counsel contend that there is not sufficient evidence to presume the plaintiff's title extinct; and further, that whether there is or is not, the defendant is not at liberty to set up an outstanding title to protect himself.

*If a defendant undertakes to show title out of the plaintiff, he ought to show where it is, that the court may see that it is a subsisting title; otherwise, the presumption will be, that it is extinguished. This was so decided in *Jackson* v. *Hudson*, 3 John. 286. The language of the court is, if a defendant sets up an outstanding title, existing in a stranger, it must be a present subsisting title; it must be one that is living and operative; otherwise the presumption will be, that it has become extinguished.

[*201]

In *Jackson* v. *Harder*, (4 John. 211,) the defendant offered to show an outstanding title subsisting in some third person. The defendant was an intruder; and Kent, Ch. J., who delivered the opinion of the court, says, " The first question which presents itself here is, whether a mere intruder can be permitted to protect his intrusion under an outstanding title in a stranger. I think not. The rule has never been carried so far; and it would be a violation of just principle, to apply it to the case of a tresspasser who enters upon another's possession without pretence of title."

He next inquires whether the title offered to be set up was a subsisting title. It was stated to have been acquired under a judgment, more than twenty years before the trial. He said, the rule is, that when upwards of twenty years of adverse possession has run against an outstanding title, it shall not be set up; the presumption being that it is no longer a subsisting title.

That the title set up as outstanding must be a subsisting one, there is no doubt. *Jackson* v. *Todd*, 6 John. 265, 266. The mortgage is not in this case a subsisting title; for the mortgagee never entered. There has been no payment of interest for twenty years, and no foreclosure. *Collins* v. *Torrey*, 7 John. 283. In the case of *Jackson* v. *M'Call*, (10 John. 380, 381,) the reason given why courts indulge presumptions is, "for the purpose of quieting the possession, and not because the court really think the fact presumed, exists." But will a court think it their duty to quiet the possession of a mere intruder against the legal title, by presuming an outstanding title? Under the circumstances of this case, we are not called upon to presume *anything in favor of the defendant. His entry was avowedly without right or pretence of right, or even license from any one.

[*202]

Had the evidence of an outstanding title been such as to justify the jury in presuming it to exist, it would undoubtedly have been proper for the judge to have submitted it to them. But if the evidence was insufficient in itself, or the defendant was not entitled to the benefit of such a defence, the judge was correct in refusing to leave the question to the jury.[1]

[1] Mere neglect of the owner, for any length of time, will not raise the presumption; there being no adverse possession against him. *Schauber* v. *Jackson*, ex dem. *Bogert*, 2 Wend. 13. *Doe*, ex dem. *Marston* v. *Butler*, 3 Wend. 149. There being no adverse possession, the heirs of the true owner recovered even against an escheat grant, though they or their ancestors had made no claim for 100 years. *Hall* v. *Gitting's lessee*, 2 Har. & John. 112, 125, 126. So where the one in possession has no title, and asserts none. *Richard* v. *Williams*, 7 Wheat. 59, 109, *et seq.* And accordingly where one has title to the whole and possession of part, this is a possession of the whole; and no presumption of a grant can therefore arise in favor of another who is tortiously in possession of the same land concurrently with the true owner.

On the whole, I am of opinion that the motion for a new trial must be denied.

NEW YORK,<br>May, 1827.

New trial denied.

Astor<br>v.<br>Union Ins. Co.

*Hammond* v. *Ridgley*, 5 Harr. & John. 215, 264, 265. The possession must be positively and unequivocally adverse. Even possession and receiving rents, offers to sell, or partial sales effected, may as well be acts of a tortious possessor, or of an agent, as of one claiming title under the real owner. *Delancey's lessee* v. *M'Keen*, 1 Wash. C. C. R. 354, 359, 360, *et seq.*; and distance and disabilities in the owner are to be considered and allowed; (id.;) and an adverse character in the possession may be done away by surrender, acknowledgment of the owner's title, or by a discontinuance of the possession, &c. *Holtzapple's lessee* v. *Phillibaum*, 4 Wash, C. C. Rep. 356, 363. Where a widow held a parcel of her husband's estate for nearly 30 years, under a deed in fee from one of the heirs; held, in an action by another of the heirs for an undivided portion of the same land, it could not be presumed that she claimed as tenant in dower, so as to raise the presumption from an acquiescence of the demandant in so long possession, that there was a regular asignment of dower. *Hale* v. *The Inhab. of Portland*, 4 N. H. Rep, 77. A title to an undivided portion of land cannot, unless in a very strong case, be acquired by concurrent possession, or acts of ownership, while the real owner is in possession. *Waldron* v. *Tuttle*, 4 N. H. Rep. 371. So of a trustee as against his *cestui que trust*, as will be seen post, note 301. Per Nott, J., in *Howard* v. *Aiken*, 3 M'Cord, 468, S. P. So of a vendee in possession under an agreement to convey; but not having paid the purchase money. *Richards* v. *M'Kie*, 1 Harp. Ch. Rep. 184. The court refused to found the presumption on a claim of constructive possession under a deed, the description in which did not clearly include the land. *Gibson* v. *Chappel*, 1 Harp. Rep. 28. Nor will a grant of land to a certain boundary, by one claiming beyond it, be received as ground for a presumption that he had released all beyond, especially where he had since conveyed land lying beyond. *Jackson*, ex dem. *Van Schaick* v. *Vincent*, 4 Wend. 633. See also *Palmer* v. *Hicks*, 6 John. Rep. 133, 135; Per Robertson, J., in *Fitzhugh* v. *Croghan*, 2 J. J. Marsh. 436 · and per Marshall, Ch. J., 7 Wheat. 546.