ASHBROOK
*vs.*
QUARLES' HEIRS

---

## Ashbrook *vs.* Quarles' Heirs.

EJECTMENT.

Case 4.

### ERROR TO BALLARD CIRCUIT.

1. The act of 1820, (3 *Statute Law,* 1043,) provides that all patents
made upon surveys made upon entries of military warrants entered
prior to the 1st of May, 1792, shall be void to all intents and pur-
poses, so far as the same may be different and variant from the
location.
2. It is incumbent upon the party opposing a right claimed under any
patent for military land west of Tennessee river, to show *clearly,*
3. The statute of limitation in force when the right accrues governs
the case.

*satisfactorily*, and *conclusively* that the survey is variant from the location. (*Ray vs. Woods & Daniel*, 2 *B. Monroe*, 222.)

4. The seven years limitation law saves the right which descend to heirs, if any one of the heirs is under disability when the right accrues—differing from the general limitation law, which requires that all be under disability to save the right of any. (*Hoskins vs. Helm*, 4 *Litt.* 14; *McIntire vs. Funk's heirs*, 5 *Ib.* 37.)

5. One disability cannot be added to another to protect a right from the operation of the statute of limitations. (*Floyd's heirs vs. Johnson*, &c. 2 *Litt.* 114.) There can be no accumulation of disabilities, by adding one to another, to preserve a right of entry. (*Clay's heirs vs. Miller*, 3 *Monroe*, 148.)

6. The same rule prevails in regard to adding one disability to another under the seven years limitation as under the general statute.

ASHBROOK
*vs.*
QUARLES' HEIRS

The case is fully stated in the opinion of the court.

*J. M. Hewitt*, for appellants—

The circuit court erred in overruling the plaintiff's motion for a new trial. Though the points made by the plaintiff's counsel for a new trial were numerous, three only will be relied upon in the discussion.

1. The suit was barred by the statute of limitations. There is no proof in this record to show that the heirs of Henry Quarles, or the heirs of Francis Quarles, were protected by disability at the time the right of entry accrued. No facts are proved to repel the effect of the operation of the limitation of seven years on behalf of the appellants, except the fact that Sarah J. Marston's children were infants at her death in 1845. It does not appear whether the mother of these infants was a *feme covert* at the time of her death, or had previously become discovert. Nor does it appear that she was sole or married at the death of her father, Francis Quarles. If Sarah J. Marston was living, she would be barred by limitation. (1 *Marshall*, 377, *Kendall vs. Slaughter; Ib.* 557; *Clay vs. Fox*, 5 *Dana*, 415.) If so, her heirs are barred also.

2. There is no proof of the death of Francis Quarles, the father of Mrs. Marston. If he is living, he has the right of action, if any exists under the claim, and the instructions of the court on that subject were erroneous. (See 2 *Dana*, 88; 11 *B. Mon-*

*roe*, 277, *Sharp and Wife vs. Head*.) If Mrs. Marston was protected by coverture during her life, her children cannot avail themselves of their infancy to prevent the running of the statute against them. It would be adding one disability to another, which is not admissible. (*Floyd's heirs vs. Johnson, &c.* 2 *Litt.* 114.)

3. The instruction of the court on the subject of the variance between the entry and survey and patent, is erroneous, and calculated to mislead the jury in regard to the evidence necessary to show the variance.

The jury had the right to weigh the evidence upon that point and decide according to its preponderance. This the jury was not permitted to do by the imperative character of the instruction. The jury was told that the evidence showing that the survey varied from the location must be *clear*, *satisfactory*, and *unequivocal*—instructions as strong as in case of murder. The jury should have been at liberty to decide that question upon the weight of evidence as it should preponderate for or against the proposition.

This widow asks nothing of the court that is not law; but entreats the supreme court of her state to protect her against the errors which may spring from speculative minds.

No brief for defendant on file.

December 6.     Judge SIMPSON delivered the opinion of the Court.

The heirs at law of Francis Quarles brought an action for the recovery of a tract of land in Ballard county, which was in the possession of the defendant, Margaret Ashbrook. The plaintiffs, in the court below, claimed the land sued for, under a patent to Henry Quarles, bearing date in 1826, which was issued in consideration of part of a land office military warrant, entered in August, 1784. The husband of the defendant entered and settled upon the land in controversy in 1837, claiming under a patent dated in 1836, and continued to reside upon it during his life-

time; and his widow has resided at the same place ever since his death. To defeat the plaintiff's action the defendant relied upon two grounds of defense.

*First.* That the patent under which the plaintiffs claimed had issued upon a survey made contrary to the location of the land in the entry, and was therefore void.

*Second.* That the statute of limitations barred the plaintiff's action.

A verdict and judgment were rendered for the plaintiffs; the defendant has appealed to this court, and insists that the court below misinstructed the jury upon the questions involved in both the grounds of defense relied upon by her.

*First.* By the act of 1820, for surveying the military claims west of the Tennessee river, it was enacted, that the surveyor of the lands set apart for the satisfaction of the legal bounties of the officers and soldiers of the Virginia line, should survey, without delay, all entries made in his office prior to the 1st day of May, 1792. The plats and certificates of survey were to be certified to the register, together with the copy of the entry on which the survey was founded; and any patent issuing on a survey not made according to the entry, was to be void, to all intents and purposes, so far as the same might be different and variant from the location. (2 *Statute Law*, 1043.)

The defendant introduced evidence tending to show, that the land covered by the patent under which the plaintiffs claimed, was not embraced by the entry made in 1784. The testimony upon this point was conflicting. The court instructed the jury, that before they could regard the patent under which the plaintiffs claimed as void, they must be satisfied by "*clear, satisfactory,* and *unequivocal* evidence," that the land embraced in it was different from that embraced in the entry. And in another instruction the jury were told by the court, that before they could

*Margin note:*

ASHBROOK
*vs.*
QUARLES' HEIRS

1. The act of 1820, (3 *Statute Law*, 1043,) provides that all patents made upon surveys may upon entries of military warrants entered prior to the first of May, 1792, shall be void to all intents and purposes, so far as the same made be different and variant from the location.

ASHBROOK
vs.
QUARLES' HEIRS

disregard said patent, they must be satisfied, beyond a *reasonable doubt*, that there was a variance between the entry and the survey and patent, with respect to the land embraced by them.

In the trial of issues in civil cases, it is, as a general rule, the duty of the jury to weigh the testimony when it is contradictory, and to find a verdict in favor of that side to which it preponderates.

2. It is incumbent upon the party opposing a right claimed under any patent for military land west of Tennessee river, to show *clearly, satisfactorily,* and *conclusively* that the survey is variant from the location.— (*Ray v. Woods & Daniel,* 2 B. *Monroe,* 222.)

But in a case like the present a different rule has been established by this court, in consequence of the dignity of the patent, and the verity which should attach to it, under the circumstances incident to its procurement. In the case of *Ray vs. Woods & Daniel,* 2 B. *Monroe,* 222, the court, in delivering its opinion, said:

"The military entries have been surveyed mostly in the absence of their owners, by disinterested surveyors chosen under state authority, and sent out with special instructions to make their surveys correspond with the entries; and the register has been directed to issue no patent unless where such correspondence exists; and where a patent has issued under all these guards, bearing the great seal of the commonwealth, it must be regarded as conferring *record evidence* of title, which will stand until its *variance* from the entry, as well as the extent and limit thereof, shall be *clearly, satisfactorily,* and *conclusively* shown; and the burthen of showing it lies upon the party impeaching the patent."

"The denunciation of the statute is highly penal upon the military claimant, and to use the language of criminal jurisprudence, a *rational doubt* as to the variance should be tantamount to a finding in favor of the military patent."

The instructions of the court which are objected to, were warranted by the doctrine settled in the above case, and were correct.

*Second.* The first question that arises, upon the second ground of defense, is, whether the limitation

contained in the Revised Statutes, or that prescribed by the previous law, governs this case.

Upon this question, there is no difficulty. This action, it is true, was commenced in 1853, after the Revised Statutes were adopted and went into force. But the cause of action had previously accrued, and it is expressly declared by the first section of the first article of the chapter on Limitations of Actions and Suits, page 458, that the provisions of that chapter shall not apply to cases in which the right of action had previously accrued, but the laws of limitation then in force shall be applicable to such cases.

As there had not been twenty years adverse possession in this case, the seven years limitation is the only one that has any application, or that the defendant can rely upon to protect her possession. She proved an adverse possession, by actual settlement and residence, for more than seven years next before the commencement of the action, and exhibited a regular derivation of title, from the commonwealth to her deceased husband, so that the bar is complete, and will effectually protect her, unless the plaintiffs can bring themselves within some of the savings of the statute.

This difference exists between the general limitation law, and the seven years limitation. Under the former, all the heirs must labor under disability, or the statute will run against all. Under the latter, the disability of one prevents the statute from running, and saves the rights of all. (*Hoskins vs. Helm,* 4 *Litt.* 314; *McIntire's heirs vs. Funk's heirs,* 5 *Litt.* 37.)

It has been repeatedly decided under the general statute, that one disability cannot be added to another in any case, so as to prevent the statute from running. (*Floyd's heirs vs. Johnston, &c.* 2 *Litt.* 114.) There can be no accumulation of disabilities by adding one to another. Whenever the ancestor would have to rely upon his own disability to preserve his right of entry, his heirs cannot avail themselves of

*Ashbrook*
*vs.*
Quarles' Heirs

3. The statute of limitation in force when a right accrues governs the case

4. The seven years limitation law saves the right which descend to heirs, if any one of the heirs is under disability when the right accrues—differing from the general limitation law, which requires that all be under disability to save the right of any. (*Hoskins v. Helm,* 4 *Littell,* 314; *McIntire's heirs v. Funk's heirs,* 5 *Ib.* 37.)

5. One disability cannot be added to anoth-

ASHBROOK
*vs.*
QUARLES' HEIRS

er to protect a right from the operation of the statute of limitations. (*Floyd's heirs v. Johnson, &c.* 2 *Litt.* 114.) There can be no accumulation of disabilities, by adding one to another, to preserve a right of entry. (*Clay's heirs v. Miller,* 3 *Monroe,* 148.)

6. The same rule prevails in regard to adding one disability to another under the seven years limitation as under the general statute.

their disability for the same purpose, upon his death. (*Clay's heirs vs. Miller*, 3 *Mon.* 148.)

Whether the same rule should be applied to the seven years limitation, has not, so far as we have been able to discover, been heretofore decided by this court. There is nothing in the exceptions in the statute which can be construed to extend to successive disabilities, or to apply to any persons but such as are laboring under disabilities at the time the cause of action accrued, or the right or title was cast upon them by the act of God or operation of law. It seems to us then that the same rule, with respect to successive disabilities, should apply under both the statutes, and that there can be no accumulation of disabilities under either. As this construction is not prohibited by anything contained in the statute prescribing a limitation of seven years, which was enacted for the protection of the rights of the actual settler, it is not only sanctioned, but it is imperatively demanded by the policy of the law, in order that the operation of the statute may not be unreasonably suspended by the intervention of successive disabilities.

One of Quarles' heirs appears to have been a *feme covert* at the time that Ashbrook settled upon the land in contest. She died in 1845, leaving infant children. More than seven years elapsed after her death before the commencement of the present action. The bar would have been complete against her had she not labored under the disability of coverture. As she would have had to rely upon her disability to prevent the statute from running against her, the infancy of her children cannot be relied upon by them for the same purpose. At her death the statute commenced running, unless some of the other heirs were still under a disability which existed at the time the cause of action accrued. If any such disability existed, it was incumbent upon the plaintiffs to show it, to prevent the operation of the statute upon their rights. As the infancy of the children

of the heir who died in 1845 was alone relied upon, the presumption is that no other disability existed. Whether the mother of these infants was a *feme covert* at the time of her death, or had previously become discovert, does not appear, nor is it material, except that if the father be living, he may have an interest in the land as tenant by the curtesy, if he had actual seizin of the land during coverture.

The court instructed the jury, that if one of the heirs was a *feme covert*, and she died in 1845, leaving infant children, that the infancy of her children prevented the statute from running, and saved the rights of all the other heirs. This instruction was erroneous, and should not have been given.

Wherefore, the judgment is reversed, and cause remanded for a new trial, and further proceedings consistent with this opinion.