*Monroe* and *Haggin*, for appellants; *Crittenden* and *Wickliffe*, for appellees.

SANDERS'
HEIRS
vs.
MORRISON'S
EX'ORS.

Petition for a re-hearing.

## South's heirs vs. Thomas' heirs.

Appeal from the Bath Circuit; S. W. ROBBINS, Judge.

*Practice. Affidavits. New trials. Surprise. Sunday. Witnesses. Statutes of limitation to entries on land. Devises. Descents. Exceptions. Infancy Judicial decisions.*

Judge MILLS delivered the Opinion of the Court.

THE heirs of Edward Thomas recovered a judgment in ejectment, against the heirs of Benjamin South, on a patent issued to their ancestor, after proving its boundary, and that the tenants resided within it, and that their ancestor died in 1801, leaving all of them infants, some of whom had not arrived to the age of twenty-one years, at the commencement of the suit.

On a subsequent day of the term, the heirs of

EJECTMENT.

Case 10.

April 19.

Judgment in ejectment, for Thomas' heirs against South's.

Motion for

SOUTH'S
HEIRS
vs.
THOMAS'
HEIRS.

new trial on
affidavit over-
ruled and ap-
peal.

South moved for a new trial, relying on the affida-vit of one of their number, who was the active per-son in defending the suit. He deposed, that he had directed his counsel to summon John M'Intire as a witness, and that M'Intire died only two or three weeks before the commencement of the term, by which *his* testimony was lost; that he, the defendant was detained in Frankfort by subpœna, and thus compelled to attend court there on a criminal prose-cution, until the Saturday evening previous to the day the cause was set for trial, which was the Mon-day following, at Bath courthouse, and the cause was tried on Tuesday; that he did not know of the death of M'Intire the witness, till the first of the term; that if he could have been at the trial, he could have discovered other witnesses, (as he has since found them,) who could have proved the same defence in-tended to be made out by M'Intire; that the defence which he could have made out by M'Intire's testi-mony, was a possession of twenty years, and that Benjamin South, from whom the defendants deriv-ed title by descent, had settled on the land in the year, 1779, and that possession was continued ever since; that consequently the adverse possession re-lied on, would reach beyond the death of the an-cesor of the lessors of the plaintiff, and the statute law commenced running in the lifetime of the an-cestor, and therefore the right of entry would be tolled.

The court overruled the motion, and South's heirs have appealed.

Where a suit, by or against numbers, is managed by one, which is the better course, his af-fidavit of facts and of sur-prise, on a motion for a new trial, is sufficient without the others.

As the tenants relied on one of their body to con-duct the defence, and he had previously attended to it, it cannot be wrong to admit his affidavit without the rest, as one would act with more efficiency than many, and his lack of attendance, owing to uncon-trolable circumstances, would be sufficient without accounting for the absence of all. It is well known that suits, where they are prosecuted or defended by numbers, are better conducted by one, as the repre-sentative of the whole, because that relying on each other, and feeling less responsibility when divided into different hands, the suit managed by all may be often neglected.

We conceive that the death of the witness, and the prevention of the acting defendant from attendance on the cause, by the process of another court, are circumstances which might well account for the unprepared state of the defence, and are such as demand a new trial, if the defence can be of any avail.

The acting defendant could not have been there, when the cause was set for trial on Monday, or when it was actually tried on Tuesday, unless he had travelled on Sunday, which cannot by law be required of him.

The question therefore, must turn upon the validity of the defence which he relied on. For however important his witnesses may be supposed by himself, yet if their testimony must be unavailing if introduced, it would certainly be useless to give way for another trial, in which the same party must be equally unsuccessful. The affiant was bound, in an affidavit, like this, for a new trial, to disclose what the defence was which he intended to make out on the second trial, in order that the court might judge whether it would be of any avail.

This he has done, and in doing so he has shown that he does not expect to be able to disprove any of the facts relied on by the lessors of the plaintiff, but to show that their right of entry was tolled by adverse possession, commencing in the lifetime of the ancestor. He does not expect to show that they took as purchasers, but only as heirs, and he designs contending, that as the cause of action accrued in the intestate's life, the bar must continue, his death and the descent to the infant children notwithstanding. In this point the law, as heretofore settled by this court, is against him.

We are all aware, that the courts of England gave the construction contended for by the appellants to their statute, and the Supreme court of the nation has given the same construction to ours, although differently expressed from the English statute. But this court, in the case of Machir vs. May &c. 4 Bibb, 43, and afterwards in the case of Sentney vs. Over-

SOUTH'S HEIRS vs. THOMAS' HEIRS.

Surprise by death of witness, absence of party in consequence of being summoned as a witness in another court.

Litigants not required to travel on Sunday.

Affidavit for a new trial, because of the absence of the party and his witness, must state the facts the witness would prove.

Limitation of 20 years.

On the casting a descent upon minors of land in the adversary possession of others, the limitation of 20 years ceases running

SOUTH'S
HEIRS
vs.
THOMAS'
HEIRS.

———

against them,
and they have
the benefit of
the exception

Cases ad-
judged by this
court, have
settled the
law, whether
right or
wrong at
first.

ton, 4 Bibb, 446, has had occasion to notice the dif-
ferent expressions in our statute, and consider their
effect, and has been compelled to say, that on cast-
ing a descent to minors, the bar ceases, and that the
expressions "or coming to *them*," means the hour
when the action accrues to *them*, who are within the
savings of the act.

The same construction has been admitted in the
cases of Kendall vs. Slaughter, 1 Marsh. 376; May
vs. Slaughter, 3 Marsh. 511; Floyd's heirs vs. John-
son's heirs, 2 Litt. 109; M'Intire's heirs vs. Funk's
heirs, 5 Litt. 34; Haddox's heirs vs. Davidson, 3
Monroe, 42; so that whatever might be the opinion of
the court, was the question new, this court cannot
depart from the former adjudications, and conceives
the matter ought to be at rest.

According to the rule as thus settled, the proof
which the appellants intended to make by M'Intire,
or by the witnesses recently discovered, would
have been of no avail, and it would have been nu-
gatory to have granted a new trial, for the purpose
of letting in a void defence; and void it must be, un-
less the court should now overrule the decisions of
a series of years, given while controversies of this
nature were numerous, and were settled according-
ly. This would be hazardous to the community,
and would jeopardize settled rights; lands must again
change their owners and pass into other hands. The
decisions on which the principle now recognized
was founded, has grown into a rule of property, and
estates have slept under it quietly. If it is now re-
versed, as the appellants require, the settled law of
thirteen years must be shaken, and in that length of
time we should have made no progress, but have
retrograded in stilling the controversies relative to
land, and again opened up those sluices of litigation,
which have so long afflicted this country.

It is not so
important the
law should be
rightly set-
tled as that
it should re-
main stable

It has been often said, that it is not so important
that the law should be rightly settled, as that it
should remain stable after it is settled. This is true,
for attempts to change the course of judicial decis-
ion, under the pretext of correcting error, are like
experiments by the quack on the human body.

They constantly harrass and often jeopardize it. But notwithstanding, the point is so well settled by former adjudications, as to present danger if it is again opened, and the numerous adjudications affords an estoppel to enquiry and argument, yet we do not hesitate to give our reasons for an adhesion to it, as the court did when it was first adopted.

South's
heirs
vs.
Thomas'
heirs.

after it is set-
tled.

The acquiesence of the community in the decision, may also be used as an argument. There has been a succession of judges on the bench, except as to one member of the court. Yet there has been no conflicting decision, and the legislature, who has the *statute of limitations* in their power, have never attempted so to reform it, as to get clear of the construction given to it by the court below, twelve or thirteen years since.

Acquiescence
of the com-
munity and
the legisla-
ture in the ju-
dicial con-
struction of a
siatute, evi-
dence of the
correctness of
the decisions.

But we do not rest the case on this ground, but profess ourselves prepared to maintain that the decision is right.

The act of limitations adopted the general provision, that twenty years should bar all actions therein named. This was enforced by the court, and when there was no existence of any disabilities on the part of the plaintiff or demandant against such a defence, he was declared to be barred.

But there were different classes of claimants or plaintiffs, one class was, where there were more plaintiffs than one, and a part, but not the whole, were under the disabilities of coverture, infancy, &c and the question arose, what was to be done with them? The court answered in divers cases, and especially in the case of M'Intire's heirs vs. Funk's heirs, that all such were barred.

Where there
are more
plaintiffs
than one, and
part only are
under the dis-
abilities, the
statute of 20
years runs
against and
bars all.

Another class was a set of infants or married women, who took not the land by descent, but by devise, and the question was made whether such *accruing* or *coming* of title to them was within the meaning of the act? The court responded, in the case of May's heirs vs. Slaughter and subsequent cases, to the question, in the negative, and pronounced them barred.

Where the
statute com-
mence runing
it continues
to run against
the devisees
or other
alienees un-
der any of the
disabilities.

One disability cannot be added to another, in any case.

A still further class presented themselves. They were infants when their ancestor's death let the land pass to them by law. It was adversely settled by strangers, and the infants had neglected to pursue their rights, being still infants, or otherwise disabled until another descent was cast on persons still infants or disabled, and they claimed to add disability to disability, and to recover. The court determined that it could not be done, in the case of Floyd's heirs vs. Johnson's heirs, and that such a principle, as avoiding the bar by supervening or successive disabilities, was wholly inadmissible, and hence all the absurdity or horror of a latent right being preserved through successive generations for centuries, turned out to be a mere chimera, however it may have been magnified by the ancient sages of the law.

These stern and inflexible decisions on the statute, were calculated to increase the repose of the country, and went far to lay the controversies asleep relative to lands, and did leave but very few who could escape the imperious provisions of the statute.

Where an adverse possession is taken of lands in the *lifetime* of the owner, and on his death the title *descends* on his heirs all within disabilities, the limitation ceases to run against them.

In such cases, the infants shall have the time allowed by the statute after they all attain full age.

There was still however one small class, (and a small one it is,) still to be decided, and that was the case of an ancestor holding lands on which an adverse claimant entered, and the ancestor had never ousted him during his life, and perhaps had not time to do so, until removed by death, leaving his title to his children, who were all infants. The question in their case was, did the statute, which commenced runing in the lifetime of the father, continue to run on, or was it suspended on account of their infancy, after the death of the ancestor? This was the question made in the case of May's heirs vs. Machir, and Sentney vs. Overton, and the court answered it in the affirmative, and that is the point which we are required by this appeal to reconsider. The question was to be answered by the statute, and the lights cast thereon by former adjudications were then, no doubt, appealed to, with every disposition to follow them, as it would bring over this class of claimants within the statute. But this was found impossible, if the words of the statute were regarded.

When the British authorities were examined, the first leading case was the case of Stowell vs. Youch, Plowden, 353. That decision did not take place on a statute limiting all real or mixed actions, but fixing the time, after which certain fines levied as therein described, should not be disturbed. The general limit was five years. But certain persons were excepted from its operation on account of disabilities.

The exception, or saving in the statute, was thus expressed: after fixing the bar of five years, to commence from the time when the estate, or cause of action "shall first grow, remain or descend, or come to them after the said fine engrossed, and proclamation made," the exception reads—

"And if the same persons, at the time such action, right and title descended, remained or come unto them, be covert de baron, or within age, in prison, or out of this land, or not of the whole mind, then it is ordained by the said authority, that their action, right and title, to be reserved and saved to them, and to their heirs, unto the time they come and be at their full age of twenty-one years, out of prison; within this land, uncovert and of whole mind. So that they and their heirs take their said action, or their lawful entry, according to their right and title within five years, next after that they come and be at full age &c."

The question which arose under this proviso, was at what period the counting of the bar must commence, in the case of a person disabled, whether at the moment the original cause of action accrued, or at the time when it descended on the person disabled. Or, in other words, did the expressions "descended, remained, or come unto them," refer to the same descending, remaining or coming, mentioned in the enacting section, within five years after which the action must be commenced, or to a subsequent "descending, remaining or coming" to the person disabled? The first was held the true construction. For it is evident that the persons in the exception, are at least part of the same persons named in the bar, for it is said, that "if the same persons at the time

Margin notes:

South's heirs vs. Thomas' heirs.

British statute of limitation of five years, in relation to certain fines of land.

Decided on this statute of England, that the descent of the title on an infant heir, did not stop the running of the statute.

such action, right and title descended &c," evident-
ly alluding to the same persons mentioned in the
bar, and the same *descending, remaining* &c.   Hence
it was held that but one accruing of title was com-
templated in the bar and exception.    But it will be
seen in the sequel, that the words, as well as the
true interpretation of our statute are different.

The next statute to which the British decisions

British sta-
tute of 21
James 1 Ch.
16, of twenty
years limita-
tion to entries
on land.

apply, is the 21 Jac. 1, c. 18, and that limits posi-
tively the same causes of action or right of entry,
which our own does, to twenty years, "next after
the title and cause of action *first* descended or fall-
en, and at no time after the said twenty years."

The proviso then is, "that if any person or per-
sons, that is, or shall be entitled to such writ or
writs, or shall have such right or title of entry, be,
or shall be, at the time said right or title *first* de-
scended, accrued, come or fallen, within the age of
twenty-one years, feme covert, *non compos mentis*, im-
prisoned or beyond the seas, that then such person
and persons, and his, and their heir or heirs, shall
or may, notwithstanding the said twenty years be
expired, bring his action, or *make his* entry, as he
might have done before this act."

The British courts decided that this proviso only

Held on this
act, that
when once the
statute com-
menced run-
ing, notwith-
standing a
descent of the
title on an
infant, it con-
tinued to run.

saved persons, who, at the first commencement of
the cause of action, were disabled, and that the "de-
scended, accrued, come or fallen," in the proviso,
meant the same "descending, accruing, coming or
falling"named in the bar, and well they might, for
it is difficult to give the act any other construction.
The words "to them" are left out, and in order that
the doubt whether the provision intended the ori-
ginal cause of action named in the bar, or the time
that such cause passed to the disabled person might
be removed, the word "*first*" is inserted, so as to
show clearly, that no other "accruing or coming"
but the *first*, or original cause of action was intend-
ed.

When Virginia, as a colony come to legislate on

Virginia sta-
tute of twen-
ty years, not
adjudicated

the subject, in the year 1705.  (See Bod. Laws, 147,)
she adopted different language from the statute of
James, and continued it in her code till the separa-

tion. It is substantially the same with our own statute now under consideration. How Virginia construed it on this point before the revolution, we have not the means of ascertaining, and since then, we do not recollect that any of her reported cases have settled, or even touched the question.

Our act adopts twenty years in the bar, directing them to be counted, commencing "next after such title or cause of action accrued, and not afterwards." Had the statute stopped at this point, it would have included every person, and we never should have been perplexed with the present question. But a. proviso adopting a different rule for some persons, follows in these words:

"Provided, nevertheless, that if any person or persons entitled to such writ or writs, or to such right or title of entry as aforesaid, shall be, or were under the age of twenty-one years, *feme covert*, *non compos mentis*, imprisoned, or not within this Commonwealth, at the time such right or title *accrued or coming to them*, every such person, and his or her heirs shall, and may, notwithstanding the said twenty years are, or shall be expired, bring and maintain his action, or make his entries within ten years after such disabilities removed, or the death of the person so disabled, and not afterwards."

The difference between this act and the British statute of fines, as well as that of James, is at once perceived. Both the words and the order of expression is different. The statute of fines, shows that the persons in the proviso, and those in the bar are the same, and the same accruing of title is designed in both. The identity of the persons and accruing of the cause of action in the bar, and the proviso in ours, is not asserted; but it is asserted by construction, and that construction is negatived by the words, and grammatical construction of the proviso. The statute of James is still more explicit, and the accruing of the action there named in the proviso, is expressly declared to be the "first." In ours the "first" is left out, and we are left to fix the accruing of the cause of action to the person disabled, as to the moment from which we must begin to count the bar. In the two British

**Margin notes:**

SOUTH'S HEIRS vs. THOMAS' HEIRS.

upon as to this question.

Statute of Kentucky of the 20 years. limitation.

—Proviso to the statute.

Diversity between the British statute and 21 James 1, and the statute of Kentucky of 1796, limiting the right of entry into lands, in case of descent on infant heirs.

statutes, the proviso makes a part of the enacting paragraph, and is incorporated with it by relative words, showing that one "accruing or coming" of the cause of action is designed in both, and the office of the proviso, is intended merely to show the different consequences, which must flow from its accruing to the person disabled, and him not disabled, at the time of one, and the first accruing of the cause of action. Instead of this, the proviso of ours is an original and independant rule, and the identity of the "accruing and coming" or of persons named in the bar as well as the proviso, could not have been found out, or thought of, from the letter of the act, if the question had not been prejudiced by former adjudications on other statutes somewhat, but not precisely similar. The fair construction of our statute is this, the proviso adopts, with regard to disabled persons, its own and a different provision, and a different or additional moment of count, from that provided for in the bar. It does not say "if the same persons," or "any of the persons" named in the bar, as the statute of fines did. But if any person or persons entitled and disabled, shall have such cause of action, he or they shall look to their own situation, and begin their count at some point for the commencement, when his or their interest first accrued, or his or their cause of complaint first began. The index to this point is given to him, and that is not the moment the cause of action accrued at *first* in the life and during the interest of another, when he or they had no interest, but it is the instant that the cause of action came to him "or them," whether that cause had its commencement before, and descended, or originated, during his own interest and disability united. Here the important difference between this act and the statute of James is apparent. The latter expressly puts in the "*first*" accruing by putting in the word "first," and leaves out the words "*to them.*" The former admits the word "first," and adds in another place "to them," in order to show that a different, or additional point of time was in the eye of the legislators. For what noun is the pronoun "them" used in this proviso? Can it be referred by any gram-

matical rules, to the persons under the general pro-provision named in the bar, or is it substituted exclusively for the "person or persons" mentioned in the proviso? The answer to this question does not admit of a doubt. The latter was intended. Couple this to the omission of the word "first," and we immediately rest on the situation of the disabled person, when he gets the cause of action, or title, whether that be the moment of the descent cast upon him, or afterwards, during his disability.

But it may be urged that the case of Floyd's heirs vs. Johnson's heirs, is inconsistent with this construction, and that a cause of action cast upon an infant from an infant ancestor, is not different from one descended from an ancestor laboring under no disability, and consequently, a succession of disabilities may ensue. For if a title or cause of action once descended, during its existence to an infant, loses the effect of the bar, on account of the infancy at the first descent, of course the person to whom it descends in the second or third instance, are equally within the terms of the proviso, and entitled to an equal protection. The force of this argument is perceived, and its conclusion is plausible, and it would be unanswerable, if the statute provided for any, but one descent or accruing of action or title, and excused any but one. But this it does not do. If a person disabled, for instance an infant, once holds a claim or right of entry, or cause of action, whether that cause of action commenced during the time of his ancester or his own time, the saving applies to him once, and but once. If he has had occasion to apply the saving once, it cannot be applied again by another, according to the words of the statute. Hence the question which arises, when an existing cause of action descends to an infant, is, has his ancestor had the use and benefit of the saving. If he had, then it is exhausted in once using. If his ancestor had not the benefit of the saving, then he can apply and use it for once. This results from the last clause of the proviso, and does not rest on the words "descend or coming to them." The last words of the proviso, say, he may "bring and maintain his action, or make his entry within ten

*Margin notes:*

SOUTH'S HEIRS vs. THOMAS' HEIRS.

If the ancestor, against whom the adversary possession was taken, within age, the disability of his heirs (of all of them) on whom the right descends, avails them nothing: otherwise where the ancestor was of full age.

<div style="float:left">SOUTH'S<br>HEIRS<br>vs.<br>THOMAS'<br>HEIRS.</div>

[now three,] years next after *such disabilities* remov-ed, or death of the person so *disabled* and not *after-wards*. These expressions expressly limit the saving to one disability, and exclude plurality and suc-cession. It terminates the saving after the death of one disabled person, although the descent may be cast upon an infant or person disabled, and precludes all new actions, or saving power "*afterwards*." The apparent inconsistency between the two cases of a cause of action descending from one adult to an in-fant, and from an infant to an infant, is not produc-ed by any words of the proviso, and is provided against in another clause and member of the provi-so. It was foreseen by the makers of the law, and settled by them in the concluding words of the proviso.

<div style="float:left">Statute of<br>Kentucky<br>paramount to<br>to the British<br>and other ju-<br>dicial decis-<br>ions on these<br>acts.</div>

We have been thus particular in vindicating the previous decisions of the court, because we are aware of the multitude of decisions which may be quoted from the British books, and some of Amer-ican character, on statutes similar, but not the same, and in which a slight change in words make an im-portant difference in the sense. These are so num-erous that we have supposed it would be an osten-tatious parade of authority to cite them all, and too great and unnecessary labor to review them. They are all opposed by one authority too strong for a greater host, and that is, the act of the legislature itself, which, when passed on a subject within the legitimate powers of the legislature, always has had, and we trust will still have, more weight with this court, than all the adjudged cases from Bracton to 3 Monroe.

<div style="float:left">Diversity be-<br>tween the ju-<br>dicial decis-<br>ion of Ken-<br>tucky and<br>England on<br>the statute<br>of frauds and<br>perjuries, and<br>limitation of<br>actions on<br>contracts.</div>

But all judicial authority is not against us, for the Supreme court of South Carolina, in adjudicating on their statute, which is like ours, has given a simi-lar decision, 2 Stark. Evi. 901, in note. We there-fore subscribe still to the doctrine of the former cases on this point, not admitting that the British decisions, if their statute was even more similar to ours than what it is, would be conclusive and ab-solutely binding on this court. For in other cases we have had to depart widely from them, to give

effect to statutes, which they, by construction, had virtually repealed. Witness the act to prevent frauds and perjuries, and this same statute of limitations on other points, baring contracts after a specified period. Then the British authorities were rejected in mass, and the plain unsophisticated sense of the statute was allowed to operate. It is true, that in all personal actions, we have adopted the British construction on their statute uniformly, because the saving or proviso in these cases, is expressed differently from the section or proviso now under consideration, and this is what the court has settled and admitted in the case of Beauchamp vs. Mudd, 2 Bibb, 538, and with that agrees all decisions in personal actions. It may still be said that the train of the decisions now re-considered, contain a doctrine not expedient or politic, and that to allow the helpless infant, on whom a disputed title of land is cast by descent, a day after he comes of full age, to recover it, is what the good of the community forbids. If this be granted, we answer that questions of policy and expediency belong to another department of government. It is ours to declare what the law is—theirs to mould it in conformity to the policy of the State, and with that department we leave this duty.

But if we are mistaken in the true meaning of the statute, and it be conceded, that the train of decisions in question, several of which have not been reported, were based in error, still we repeat the danger of correcting it. The consequences may be more fatal, than a total disregard of British authorities for centuries. If it be said that these authorities, as well as those of the American courts are far the most numerous, and cover up a space of time exceeding two hundred years, still we are well aware, that *one* decision of this court, persevered in, as these have been, for thirteen years, is more regarded in this State, soon ripens itself into a rule of property, and enters more deeply into the interest of society, than all the British authorities for a hundred generations that are passed away; and reversing them and retracing our steps for a few years back, may not only be a way of removing

South's HEIRS vs. THOMAS' HEIRS.

Precedents in this court of greater weight than the British decisions.

SOUTH'S
HEIRS
vs.
THOMAS'
HEIRS.

Cases of
Machir &c.vs
May &c. and
Sentney vs.
Overton,
deciding that
the casting a
descent of a
right of entry
on infant
heirs, stops
the running
of the sta-
tutes dissent-
ed from.

Opinion that
"the altering
settled rules
concerning
property, is
the most dan-
gerous way of
removing
land marks,"
concurred in.

Principles
and policy of
the Statutes
of limitation.

land-marks, as a sage of the law has expressed it, but of removing from land the owners themselves.

The judgment of the court, (the Chief Justice dissenting,) is therefore affirmed with costs.

*Dissent of Chief Justice* BIBB.

THE court did decide in the cases of Machir vs. May &c. in 1815, 4 Bibb, 43, and Sentney vs. Overton, 4 Bibb, 446, in 1816; that although the statute of limitation commenced running against the ancestor, by reason of an adverse possession against him when under no disability, yet it ceased running upon the subsequent death of the ancestor, and descent to heirs under age, and that the heirs had ten years after disability removed to make entry and bring their action.

I concur in the opinion long ago expressed and often approved, that "the altering settled rules concerning property, is the most dangerous way of removing land marks." Such was the sentiment of Chief Justice Parker, delivered in 1717, in Good-right vs. Wright, 1 Pr. Wms. 399. In 1724, Lord Chancellor Macclesfield, in the case of Wagstaff vs. Wagstaff, 2 Pr. Wms. 258, declared his opinion was "never to shake any settled resolution touching property or the title to land, it being for the common good, that these should be certain and known, however ill grounded the first resolution might be." But contrasting the two decisions of Machir vs. May, and Sentney vs. Overton, with the other adjudications upon the statutes of limitation, they may be compared to two trunks from one root, blasted by the lightnings, and standing amidst a forest of evergreens.

Our statutes of limitation were taken from the statutes of Virginia, and they were taken from the statutes of England, particularly from the statute of 21 James, I, ch. 16. This statute and others prior and subsequent thereto in England, as well as the statutes in the States taken from the statutes of England, have called forth very many adjudications. And whether the limitation be to actions real, per-

sonal or mixed, whether for limiting writs of forme- don, writs of entry, actions of trespass, detinue, trover, account, or upon the case, or entries for avoiding fines and recoveries, yet the savings in favor of persons laboring under any of the disabilities mentioned in the statutes, are so similar in all, that the exposition of the proviso in any one, furnishes the rule for a similar proviso in any other statute or section. The objects of all the statutes of limitation are the same, to protect against stale and ancient claims, whether well or ill founded in their origin, but which may have been discharged or released, to secure against the machinations of dishonesty, when attempted under the advantages attendant upon lapse of time, loss of papers and death of witnesses, to quiet possessions, and extinguish dormant claims, and to consult the repose of society. There is so much wisdom in the enaction of these statutes, and so much public tranquility resulting from them, that the wisest and ablest legislators, judges and chancellors have endeavored to render effectual the policy of those statues, by enforcing the bar against legal and equitable actions.

In the construction of these statutes, it is an established rule, that when a statute begins to run against a title or claim, it continues to run until it works a complete bar, without interruption from the death of the claimant, and notwithstanding any subsequent disability. Stowell vs. Zouch, Plowd. com. 353; Peck vs. The trustees of Randall, 1 John. Reports, 165; Moore's heirs vs. White, 6 John. ch. rep. 372; Damerest vs. Wynkoop, 3 John. ch. rep. 131; Beauchamp vs. Mudd, 2 Bibb, 538; Floyd's heirs vs. Johnson, 2 Litt. rep. 114; Walden vs. The heirs of Gratz, 1 Wheat. 296. To these might be added many others, which are referred to however, by chancellor Kent in Wynkoop vs Damerest.

The case of Stowell vs. Zouch was decided, 11 Elizabeth. The arguments began in the common bench, in the sixth year of Elizabeth, and the matter was thence adjourned into the exchequer chamber, before the chief Baron, and all the justices of England. It was there argued fully and profound-

*Margin notes:*

SOUTH's HEIRS vs. THOMAS' HEIRS.

It is an established rule in the construction of the British Statutes of limitation, that wherever the time has begun to run, it continues to run notwithstanding any subsequent disability.

Case of Stowell vs. Zouch.

SOUTH'S
HEIRS
vs.
THOMAS'
HEIRS.

ly by the bar, and most learnedly and ably discussed by the judges. It was illuminated by all the genius and learning of Westminster Hall. Illustrations were drawn from the principles of the common law, other statutes, precedents, reason and policy, and finally decided by a great majority of the judges.

Running of the time of the statute of limitation of five years after fine with proclamation is not interrupted by the death of the disseizee and descent cast on his infant heir.

The case was, Zouch disseized Stowell, and levied a fine with proclamations. At the time of the fine, Stowell was under no disability; three years after the fine, Stowell died without entry or claim to avoid the fine; his right descended to his grandson, then only six years old. The infant made no claim to avoid the fine during his minority, but entered within one year after he came of age, and brought his writ of entry upon a disseizin against Zouch, who pleaded the fine with proclamations; Stowell replied the disseizen of his grandfather, his subsequent death within three years after the fine, that at the time of the descent to him as heir, he was of the age of six years only, and his entry within one year after his full age. To this replication Zouch demurred and Stowell joined in demurrer. The question was whether the death of Stowell, the grandfather, before the end of the five years given to avoid the fine, and the descent to the infant heir, gave him time after his full age to avoid the fine, according to the saving in the statute of limitations of 4 Henry, VII, ch. 24. The enacting clause, after prescribing the proclamations to be made, declares:—

Statute 4
Henry VII,
ch. 24.

Sec. 3. "And the said proclamations so made and had, the fine to be a final end, and conclude as well privies and strangers to the same, except women covert, (other than being parties to the said fine,) and every person then being within age of 21 years, in prison, or out of this realm, or not of whole mind, at the time of the said fine levied, not parties to such fine."

Sec. 4. "And saving to every person or persons, and to their heirs, other than parties in said fine, such right, claim and interest as they have to, or in the said lands, tenements, or other hereditaments, at the time of such fine engrossed, so that they pursue their title, claim or interest by way of action, or

lawful entry within five years next after the said proclamations had and made."

Sec. 5. "And also, saving to all such persons such action, right, title, claim and interest in, and to said lands, tenements, or other hereditaments, as shall first grow, remain, or descend, or come to them, after the said fine engrossed, and proclamation made, by force of any gift in the tail, or by virtue of any other cause or matter, had and made before the said fine levied, so that they take their action, or pursue their said right and title according to law, within five years next after such action, right, claim, title or interest to them accrued, descended, fallen or come."

Sec. 7. "And if the same persons, at the time of such action, right or title, accrued, descended, remained or come unto them, be *covert de baron*, or within age, in prison, or out of this land, or not of whole mind, then it is ordained by the said authority, that their action, right or title, to be reserved and saved to them, and to their heirs, unto the time they come and be at their full age of twenty-one years, out of prison, within this land, uncovert, and of whole mind; so that they, or their heirs, take their said actions, or their lawful entry, according to their right and title, within five years next after that they come, and be at their full age &c."

Sec. 8. "And also, it is ordained by the authority aforesaid, that all such persons as be *covert de baron*, not party to the fine, and every person being within age of 21 years, in prison, or out of this land, or not of whole mind at the time of the said fines levied and engrossed, and by this said act before excepted, having any right or title, or cause of action, to any of the said lands, and other hereditaments, that they or their heirs, inheritable to the same, take their said actions, or lawful entry according to their right and title, within five years next after they come and be of age of 21 years, out of prison, uncovert, within this land, and of whole mind, and the same actions sue, or their lawful entry take and pursue according to law."

Sec. 9. "And if they do not take their actions and entries as is aforesaid, that they, and every of them, and their heirs, and the heirs of every of them, be concluded by the said fines forever, in like form, as they be that be privies or parties to the said fines."

I have copied this statute from Viner, title Fines, (vol. XIII, p. 260,) that the points argued and resolved, as reported by Plowden, may be more easily understood than by the extracts given in the report.

For Stowell, the demandant, it was argued:

I. That he was not within the body of the act,
Argument on the part of Stowell, that he was within the exception.

1st Ground.
that he was out of the letter of the enacted limitation, but within the exception of the body of the act, as well as within the saving; that he was an infant at the time of the fine, and so excepted out of the limiting part, (of the third section,) and a stranger to the fine. They took a distinction between the exception contained in the limiting clause, and a saving. That all infants who had right at the time of the fine, as well as all infants who had not right, were excepted out of the third section; but that the 8 and 9 sections were made to prescribe the time for such.

2nd Ground.
II. That Stowell, not being comprised in the body of the limiting part of the third section, was clearly within the time prescribed and enacted by the eighth section, having been but three years and a few months old, when the fine was levied, only six years old when the right and title first accrued to him, and having brought his action in less than five years after he attained full age.

3rd Ground.
III. That if Stowell was comprised within the letter of the act, yet he was not within the sense and meaning of the enaction, but was aided by the first saving contained in the fourth section. That he was not party nor privy, to the fine; himself and grandfather were strangers; the act intended by the saving's to preserve the rights of strangers, by giving time to make claim against the fine; that as the grandfather died within three years after the fine,

and the right descended to the infant heir, the demandant, the law could not intend to require him to make claim, or impute laches to him until full age, and so he had come within due time, according to the sense of the statute; that he cannot be prejudiced by the death of his ancestor within the time allowed to make claim; that it was not the intention of the act to drive infants to make claim, or to impute laches to them.

IV. They relied also upon the words of the second saving, (in the 6th section,) and that Stowell was within it, being an infant when the right first accrued to him, and having brought his action within the time prescribed to infants according to that clause, for the right had first descended to the demandant, and had descended to no other person after the proclamations made.

V. They argued that the expressions in the 8th section, "having any right or title, or cause of action," did not allude to having such title at the time of the fine, but to the time of making entry, or suit taken within five years after disability removed.

Lastly: They contended upon the equity of the savings, that he was not barred.

But it was resolved by the court, that the object of the statute was peace and public tranquility, which is greatly to be preferred, and to have greater consideration in the exposition of the statute, than the injury which particular persons, as infants, feme coverts and others, may suffer by it.

II. That the infants and others contained in the exception, are such as have right at the time of the fine levied and no others.

III. That the saving in favor of heirs (in the 4th section,) extended to heirs generally, whether over or under age of twenty-one, so as they pursued their right within the five years next after porclamations made.

IV. That the five years commenced running upon the death of the ancestor of full age, and cannot admit of any intermission, but shall be ac-

*[Margin notes:]*

SOUTH'S HEIRS vs. THOMAS' HEIRS.

4th Ground.

5th Ground.

6th. Equity of the statute relied on against the bar.

Resolutions of the Court. 1st. On the policy of the limitation.

2d Resolution

3d Resolution

4th. Resolution, that the time of the

SOUTH's
HEIRS
vs.
THOMAS'
HEIRS.

*limitation did not stop running by the descent cast on the infant heir.*

counted continually from the first day of them. That if an infant should have five years *de novo*, after his full age, the matter might possibly be delayed many hundred years, by death of one heir, and the descent to another under age, and so on; that the right would come to be tried when it was out of the memory of any man living, and yet in such a dark case, the jury would be under the necessity of giving a verdict; and such darkness and ignorance of the matters, would be the means of introducing perjury of witnesses and other mischiefs, which the legislature intended to prevent by removing the causes, by limiting a certain time for the first right which they did not intend should be exceeded, although some particular persons might suffer by it.

*5th. That the time allowed by the statutes of limitation cannot be enlarged by any equitable construction.*

V. That where an act limits a time, for the public repose of the realm, and in order to avoid universal trouble, such time ought not, either by exposition or equity, to be favored and enlarged for an infant, or any other, beyond the strict extent of the words; for the public repose is more to be regarded than the private convenience of any particular person; whether he be an infant, or of unsound mind, or in other degree.

*6th. Statute having once commenced running, shall never cease to run till the bar is complete.*

*The disability within the proviso of the Statutes of limitation, must exist when the right of entry or cause of action accrues, and no subsequent disability can prevent the bar.*

VI. That if a person having present right is under disabilities, and all are removed, the five years appointed shall commence, and if the person falls within a month after, into any of the defects or impediments mentioned in the statute, and so continues all the five years, or at the end of the first month of the five years dies, his heir within age, the five years before commenced, shall proceed, and non claim within the five years, shall bind the party and his heirs, as well as if he had been void of defects, or impediments during the whole five years.

And so judgment was given, that the demandant Stowell be barred.

The great and leading principle in this case is, that the disability within the proviso must exist when the right of entry, or cause of action, accrues, and that a subsequent disability is of no account to prevent the bar.

I have been thus particular in noticing the points argued and resolved, because the elaborate investigation which they received (for as Plowden tells us, each of the judges had a whole day for his argument, in the Exchequer Chamber,) and the profound learning and reasoning of the judges have so established the principle and incidental resolves, as that, from that time, they have been approved and followed in the exposition of the savings of all the statutes of limitation, as well in England as in the United States. To cite all the cases in which the case of Stowell vs. Zouch has been followed would be tedious; Chancellor Kent has referred to very many in the case of Wynkoop vs. Damerest.

<div style="text-align: right">Sowin's HEIRS vs. Thomas' HEIRS</div>

<div style="text-align: right">Wynkoop vs. Damerest, by Chancellor Kent.</div>

When, therefore, in 1812, the judges declared in the case of Beauchamp vs. Mudd, (2 Bibb, 538,) in applying the statute of limitations, "it is an established rule, that when the statute begins to run, it continues to run without interruption from the death of the claimant," they spoke, like Paul unto Festus, the language of soberness and truth. It was the established doctrine, as well in relation to the realty, as to the personalty.

<div style="text-align: right">Beauchamp vs. Mudd —When the statute begins to run, it continues without interruption from the death of the claimant.</div>

In Machir vs. May &c. (4 Bibb, 43,) the doctrine is again recognized as well established in England, upon the construction of the British statute.

But it is supposed that there is a difference in substance between the import of the British statute and our own.

<div style="text-align: right">Comparison of the statute of England and Kentucky.</div>

The British statute, (21 Jac. 1 c. 16,) enacts "that all writs of formedon in descender, formedon in reverter, and formedon in remainder, *hereafter* to be sued or brought, for any manors, lands, tenements, or hereditaments, whereunto any person or persons, now hath, or have any title, or cause to have, or pursue any such writ, shall be sued or taken within twenty years, next after the end of this present session of parliament; and after the said twenty years expired, no person or persons, or any of their heirs, shall have, or maintain any such writ, of, or for any of the said manors, lands, tenements or hereditaments; (2) and that all writs of formedon in de-

<div style="text-align: right">Statute of 21 James I, ch. 16.</div>

scender, formendon in remainder, formendon in re-verter, of any manors, lands, tenements or other here-ditaments whatsoever, at any time hereafter to be sued or brought by occasion or means of any title or cause hereafter happening, shall be sued or taken within twenty years next after the title and cause of action first descended or fallen, and at no time after the said twenty years; (3) and that no person or persons, that now hath any right, or title of entry into any manors, lands, tenements, or hereditaments now held from him or them, shall thereinto enter, but within twenty years next after the end of this present session of parliament, or within twenty years next after any other title of entry accrued; (4) and that no person or persons, shall at any time hereafter, make any entry into any lands, tenements, or hereditaments, but within twenty years next after his, or their right or title, which shall hereafter first descend or accrue to the same, and in default thereof, such persons so not entering, and their heirs, shall be utterly excluded and disabled from such entry after to be made, any former law or statute to the contrary notwithstanding."

The proviso.

"II. Provided, nevertheless, that if any person or persons that is, or shall be, entitled to such writ or writs, or shall have such right or title of entry, be, or shall be, at the time of the said right or title first descended, accrued, come or fallen, within the age of one and twenty years, feme covert, non compos mentis, imprisoned, or beyond the seas, that then such person or persons, and his and their heir and heirs, shall, or may, notwithstanding the said twenty years be expired, bring his action, or make his entry as he might have done before this act; so as such person and persons, or his or their heir and heirs, shall within ten years, next after his and their full age, discoverture, coming of sound mind, enlargement out of prison, or coming into this realm, or death, take benefit of, and sue forth the same, and at no time after the said ten years."

Statute of Kentucky of 1796.

Our statutes enacts, that "all writs of formedon in descender, remainder, or reversion of any lands, tenements or hereditaments whatsoever, hereafter

to be brought upon any title heretofore accrued, or
which may hereafter fall or accrue, shall be sued
out within twenty years, next after such title, or
cause of action accrued, and not afterwards; (2)
and that no person or persons, who now hath, or
have, or may hereafter have any right or title of en-
try into any lands, tenements or hereditaments, shall
make any entry, but within twenty years, next af-
ter such right or title accrued, and such person
shall be barred from any entry afterwards."

"Provided, nevertheless, That if any person or
persons, entitled to such writ or writs, or to such
right or title of entry as aforesaid, shall be, or were
under the age of twenty years, *feme covert, non com-
pos mentis,* imprisoned, or not within this Common-
wealth at the time such right or title accrued or
coming to them, every such person, and his or her
heirs, shall or may, notwithstanding the said twenty
years are, or shall be expired, bring and maintain
his action, or make his entries within ten years,
next after such disabilities removed, or death of the
person so disabled, and not afterwards."

It is said that the saving of the statute of James,
applies so as to save only the right or title of entry,
of those who were, or shall be infants &c. at the
time when the said right or title *first*-descended, ac-
crued, come or fallen. But that our statute, by its
saving, applies to those who were, or shall be in-
fants &c. at the time when the said rights, or title
accrued, or coming to them. And it is also, farther
said, (in the case of May vs. Machir,) that "the sav-
ing in our statute, evidently relates to the time
when the right accrues, or comes to those labour-
ing under the disabilities therein mentioned, not to
the time when the right first accrued to those un-
der whom they derive their right; and to extend it
to the latter only, would, therefore, be a plain and
direct violation of the express words of the stat-
utes."

To this exposition of the statute, my mind cannot
assent. It would lead to this consequence, that if
one having title in *fee simple,* should be quiescent for
nineteen years, without entry or suit, against one

SOUTH'S
HEIRS
vs.
THOMAS'
HEIRS.

Proviso in the
Statute of
Kentucky.

Statement of
the distinc-
tion taken be-
tween the
British and
Kentucky
Statutes.

Apparent ef-
fect of the
case of
Machir &c.
vs. May &c.

SOUTH'S
HEIRS
vs.
THOMAS'
HEIRS.

in adding disability upon disability.

who had taken adverse possession, and should then die, his heir of non-age, the heir would take his right, in fee with a title and right of entry; not barred, the statute would cease running, and the heir being within the saving, would have ten years after his disability removed, which disability might be 19 years; but dying before the ten years were expired, viz: after twenty-eight years, from the descent to him, and forty-seven years after adverse possession against his ancestor, the heir would transmit the right to the estate, with a right of entry not tolled to his heir under disability, who might again die, transmitting the estate with a right of entry not barred, and so on, until all the inconveniences and mischiefs might arise, suggested in Stowell's case, and as was said by the chancellor in another case, "a right might travel through minorities for two centuries."

Floyd's heirs
vs. Johnson
2 Littell 114
compared
with Machir
vs. May &c.

This consequence is, however, avoided by the case of Floyd's heirs vs. Johnson, 2 Litt. 114, in a decision, upon the statute of limitations, which I think is correct; but which, without professing to overrule the cases of May vs. Machir, and Sentney vs. Overton, does to my mind, overturn the construction given in those cases. Mrs. Floyd was a *feme covert*, when her cause of action accrued, and died a *feme covert*, so the limitation never began to to run against her, the right descended to her heirs all under disabilities, and they sued in less than ten years after their disability removed, but more than ten years after Mrs. Floyd's death. But they were barred, because the ten years had expired after the death of the ancestor before suit. In May's heirs vs. Machir, the twenty years had expired before suit, the adverse possession was taken against the ancestor, before his death, he was killed in March, 1790, the suit was commenced in May, 1813, upwards of twenty-three years after the death of the ancestor. The heirs were not confined to the ten years after the death of their ancestor; but were allowed ten years after their disability removed, to make their entry into the land, and to bring their ejectment. The statute ceased to run against May's heirs, because, said the court, the saving in our stat-

ute "evidently relates to the time when the right accrues, or comes to those laboring under the disabilities therein mentioned, and not to the time when the right first accrued, to those under whom they derive their right." In the two cases, May's heirs and Floyd's heirs sued after twenty years, and after ten years from the death of their ancestor, in less than ten years after their respective disabilities were removed; so far their cases were similar. The difference was, Mrs. Floyd was a *feme covert*, when the cause of action accrued to her, the statute never began to run against her. John May was under no disability, when the cause of action accrued to him, and the statute did begin to run against him. May's infant heirs were allowed ten years after their disability removed. The heirs of Mrs. Floyd were not allowed ten years after their disabilities removed, the court did not allow disability after disability, because they said, after reciting the proviso in the statute, "according to the plain and literal import of this language, the right is saved to the person himself, for ten years after the disability removed, or to his heirs after his death, and is forbidden to be exercised by his heir afterwards, without regard to his condition."

This sentence standing by itself, (unqualified by the reference in the opinion to May ads. Machir, and Sentney vs. Overton,) contains, as I think, the true exposition of the statute, according to the import of the statute, and in accordance with the principles of the common law. If the ancestor mortgages the estate, the heir inherits subject to the mortgage. If the government imposes a tax with a lien for payment, the heir inherits subject to the tax and lien. If the ancestor is dispossessed, and the limitation begins to run against the ancestor, the heir inherits his right and title of entry, and action subject to the prescription to his ancestor. He inherits the estate *cum onere*. The person designated in the saving part of the statute, to whom, and to whose heirs the time is given, is the same person who is meant and described in the part which enacts the limitation. It is to a disabled person and his heirs, and not to disabled heirs that the saving

Argument, on
the words of
the Statute
and *proviso*, against the
construction
in favor of the
infant heir of
the ousted
ancestor.

applies. The statute limits the time in which e-jectments shall be brought, by limiting the time within which entry shall be made to twenty years, the cause of action arises by adverse possession, then the twenty years begins to be accounted, within which the party having right and title of entry, must make his entry, or bring his action. The clause enacting the prescription of twenty years is general. It designates the persons, by reference to them as having any right or title of entry, and prescribes, that this right and title of entry, shall be pursued within twenty years. Then comes the proviso, "that if any person or persons, entitled to such writ or writs, or such right or title of entry as aforesaid;" these words refer to the very same persons to whom the requisition and prescription had been addressed in the previous section, "shall be, or were under the age of twenty-one years &c." these words refer to the same persons alluded to in the section of limitation, "at the time such right or title accrued, or coming to them;" these words refer to the same persons, to the same writs, same entries, same rights and same actions described in the previous section of limitation; "at the time such right or title accrued or coming to them," do not shift the time of accrual or coming; to them the word "such," refers to those rights and titles mentioned in the section of limitation. The words "accrued or coming," the one in the past, the other in the future tense, are used, because the limitation is prescribed in the previous section, to persons having at the passage of the act, or who should thereafter have any right or title of entry. The limitations to writs of formedon, and to rights and titles of entry are all limited, by reference to those titles or causes of suits, existing or accrued, at the passage of the act, and to those thereafter to accrue. The words as to limitation of writs of formedon, are in reference to "any title heretofore accrued, or which may hereafter fall or accrue;" as to the possessory actions, the words are, "that no person or persons who now hath, or have, or may hereafter have any right or title of entry;" therefore, in the proviso, the saving is made in reference to causes of action ac-

crued at the passage of the act, and to causes of action thereafter to arise, so as to make the saving in cases of disability co-extensive with the limitations enacted. Causes of action existing and accrued at the passage of the act were limited to twenty years next, after the cause of action, as well as causes of action to accrue. The expressions "accrued or coming to them," were necessary in the saving clause, to meet the expressions, "heretofore accrued, or which may hereafter fall or accrue," and "now hath or have, or may hereafter have," in the limiting clause. "Accrued or coming to them," immediately follow, and are connected with the words, "at, the time such right or title," and "them" refers to those alluded to in the previous section, whose actions are limited and proscribed in the clause for limitation of the actions. The words "such right or title," refer to, and mean rights and titles of formedon, and of entry, such as are described in the clause of limitation, and which are required to be prosecuted within twenty years next after such title or cause of action accrued or to accrue. Those rights or titles in the saving clause, are the rights and titles upon which the actions arise; the persons under disability, are such as are so at the time the cause of action accrued. The statute of James, in the limiting part, is distributed into four divisions, one for formedons accrued, two for those to accrue, three for rights and titles of entry accrued, four for those to accrue. In our statute the actions of formedon accrued, or to accrue, are thrown into one division, and the titles of entry accrued, and to accrue, are thrown into another, and all into one section, the proviso in another. The statute of James is more verbose than ours. Fines and recoveries were used in England to bar entails. The words "first descended &c," were introduced into the statute of Henry 4th, limiting the time, after fine with proclamations for entry, and suit to avoid the fine to five years, and have been preserved in their statutes and many copied from them. To those who are curious to learn in what possible cases of limitation, under the statute of land titles in England, those words were supposed proper, or useful to be intro-

SOUTH'S
HEIRS
vs.
THOMAS'
HEIRS.

duced out of abundant caution, I recommend the case of Stowell vs. Zouch, for a commentary on those expressions. Certainly they can have no bearing in this controversy.

Objection to placing the infant heir of an ancestor, against whose right the Statute had *never* began to run, (Floyd's heirs vs. Johnson,) in a worse condition than the infant heir of one against whom the limitation had commenced to run, (Machir vs. May &c.)

I can perceive no sufficient reason for placing the infant heir of an ancestor against whose *right the* limitation never commenced to run, in worse condition than the infant heir of an ancestor, against whose right the limitation had commenced to run. My opinion is, that the heir inherits the estate of the ancestor *cum onere.* I perceive sufficient reasons in the opinions of the judges in the case of Stowell vs. Zouch, and very many other cases against adding disability to disability, and sufficient reason against suffering the limitation, when running, from being broken and arrested by supervening disability. The enacting clause of our statute is general and without exception. The saving clause, as I think, applies only to such person as had the right or title of entry, or action, at the time when the cause of action accrued, and who then was under some disabilty and *impediment to prosecute* his rights; that to such person, so disabled, when the cause of action accrued, and to his heirs generally, whether disabled or not, the ten years are given; that the saving does not go lame upon one foot, making a difference between heirs under disability, and heirs under no disability. The question must always be, to whom the right of entry, or cause of action accrued, was he then under disability, if so, to him and his heirs, the saving is extended.

Objection against the distinction between the statute of James and our statute.

I perceive no difference between the statute of James and our own, which can justify a difference of construction, and departure from rules of limitation so well settled, and so long established.

Walden vs. Gratz Supreme court of the United States—against the distinction,

In the Supreme court of the United States, the supposed difference between our statute and the statute of James was urged in 1816, in the case of Walden vs. the heirs of Gratz, in a case depending on this statute, (1 Wheat. 296.) That court in their decision upon our statute, declared "its language does not vary essentially from the language of the statute of James, the construction of which has

been well settled, and it is to be construed as that, and all other acts of limitation founded on it, have been construed." The judgment was accordingly rendered in conformity to the construction which has been so long and so generally established.

I am not unmindful of the mention made of the doctrine of the cases of Machir vs. May, and Sentney vs. Overton, in subsequent cases, particularly in Kendall vs. Slaughter, 1.Marsh. 376; May's heirs vs. Slaughter, 3 Marsh. 511; Haddix's heirs vs. Davidson, 3 Monroe, 42; M'Intire vs. Funk's heirs, 5 Litt. 34. In these cases, however, the rule of limitation in Machir vs. May, was not applied, but only noticed, like shoals and rocks on a mariners chart, looked to and avoided. These cases are not sufficient in my mind, to outweigh the great number of determinations, from the case of Stowell vs. Zouch, in 1569, to that of Walden vs. Gratz's heirs, in 1816. To argue against a former determination of this court, and the opinions of my associates is an unpleasant task. I have endeavored to perform what appears to me to be my duty, with becoming courtesy. Their perceptions are not mine, nor mine theirs. I have endeavored to restore what I think, is the plain meaning of the statute. I cannot consent to innovate upon a rule of limitation, which has been approved by the experience of more than two centuries, is founded in the wisest policy, adjudicated by a constellation of judges in successive generations, and so necessary and proper in quieting conflicting land claims, now, and in all time to come.

The rule is, that the saving in the statute, refers to disabilities existing at the time when the cause of action arose; not to the time of the transmission of the right or title, from one to another. After disabilities, surpervient, or cumulative weigh nothing.

My opinion is, that a new trial ought to have been granted.

*Crittenden,* for appellants; *Brown,* for appellees.

<div style="margin notes">
SOUTH'S HEIRS vs. THOMAS' HEIRS.

and according to the British decisions.

Cases since Machir vs. May, &c. and Sentney vs. Overton, not ruled on the principles those cases were decided on.

Insisted that the saving in statute refers to disabilities existing at the time the cause of action arose, not to the subsequent. dissent.
</div>